THE STATE OF NEBRASKA, EX REL. ALEXANDER W. MORGAN, AND OTHERS, v. THE BOARD OF COUNTY COMMISSIONERS OF NEMAHA COUNTY.

1. **Re-location of County Seats.** A petition containing eleven hundred and nine names was presented to the board of county commissioners of N. county, praying said board to call a special election for the re-location of the county seat of said county. The whole number of votes cast in said county at the preceding general election was seventeen hundred and seventy-six. The commissioners rejected certain votes, thereby reducing the number below three-fifths of the votes cast at the preceding

general election. *Held*, that the error, if any, in rejecting said names, could not be reviewed by proceedings in mandamus. 2. That parties signing said petition are in the attitude of plaintiffs, and may withdraw their names at any time before it is submitted to the board, or afterwards, before it is acted upon, for sufficient cause.

2. ————: PETITION. To authorize the board in calling an election for such purpose, the petition must contain the requisite number of names at the time it is acted upon by them.

3. **Mandamus** is not a proceeding to correct errors; it is invoked merely to compel action, and creates no new powers.

ORIGINAL application for mandamus.

*Hewett & Yocum and T. L. Schick*, for relators.

*J. H. Broady and S. A. Osborn*, for respondent.

MAXWELL, CH. J.

This is an application for a peremptory writ of mandamus to compel the board of county commissioners of Nemaha county to call a special election for the purpose of submitting to the electors of that county the question of re-locating the county seat. The petition alleges that on the 11th day of October, 1879, the petitioners herein presented to the board of county commissioners of said county a petition signed by eleven hundred and nine electors of said county, asking said board to call a special election for the purpose of submitting to the people of said county the question of the re-location of the county seat; that the petition contained, in addition to the names of the petitioners, the section, township, and range on which, or town or city in which, the petitioners reside, their ages and time of residence in the county; that one of

NOTE.—See *Ellis v. Karl*, 7 Neb., 381. *State, ex rel. Reed, v. Ramsay*, 8 Neb., 286. *Herman v. Edson*, 9 Neb., 152. *State, ex rel. Townsend, v. Hill, post.*—REP.

said signers was not an elector, and another had sign-
ed the petition twice; that the whole number of votes
cast at the general election in said county in Novem-
ber, 1878, was seventeen hundred and seventy-six, and
that the number of signers of said petition exceeded
three-fifths of said number; that said board of com-
missioners, after receiving said petition, did arbitrari-
ly and without legal cause or excuse, and against the
protest of the petitioners, refuse to count or consider
all the names of said signers, but rejected therefrom
thirty-three names, and also rejected the names of
four of said signers, upon the ground that they were
disqualified, without any evidence of disqualification
whatever, and afterwards refused to act upon said pe-
tition or call said election.

Section one of the act "to provide for the re-loca-
tion of county seats," approved February 24, 1875,
provides that " whenever the inhabitants of any coun-
ty are desirous of changing their county seat, and
upon petitions therefor being presented to the county
commissioners, signed by resident electors of said
county, equal in number to three-fifths of all the votes
cast in said county at the last general election held
therein, said petition shall contain, in addition to the
names of the petitioners, the section, township, and
range on which, or town or city in which, the peti-
tioners reside, their ages, and time of residence in the
county, it shall be the duty of said board of commis-
sioners to forthwith call a special election in said
county for the purpose of submitting to the qualified
electors thereof the question of the re-location of the
county seat," etc.    Laws 1875, p. 159.

During the argument of the cause it was admitted
that a number of the signers of said petition had
withdrawn their names from the same before it was
presented to the county commissioners, and also that

a number of said signers had gone before the board of commissioners after said petition had been presented to said board, and asked to have their names erased therefrom.

The petitioners, in an application for the re-location of a county seat, may be regarded as plaintiffs in the proceeding. Any or all of the signers of such a petition may withdraw their names at any time before it is presented to the board of county commissioners; their action in signing the same is entirely voluntary; and if they withdraw their names, either directly by erasure from the petition or by signing a remonstrance against calling said election, their names cannot be counted by the commissioners as petitioners. And if parties have been induced by misrepresentation to sign such petition they may undoubtedly go before the board and state the facts as to such misrepresentations, and demand that their names be stricken from the petition, or not counted as petitioners. The commissioners should not call an election for such purpose unless they find, at the time of calling said election, that more than three-fifths of the voters, as shown by the return of the last general election, are *then* petitioners in favor of such election. It is not the intention of the law to subject the people of a county to expense, annoyance, and animosities not unfrequently attending an election for the re-location of a county seat, unless it shall appear that the requisite number of voters are at the time of calling the same in favor of such election. The petition is only a means of determining that at least three-fifths of the legal voters of a county are in favor of the re-location of a county seat, and that an election called for the purpose of submitting such question to the people of the county will in all probability result in a re-location of the county seat.

But whatever errors may have been committed by the board of commissioners in rejecting the names of signers of said petition they cannot be considered in this case.  Such alleged errors may be reviewed by a proper proceeding, but cannot be corrected in an application of this kind by mandamus.  A writ of mandamus is merely to compel action and enforce the performance of a pre-existing duty.  It creates no new authority, nor confers any powers which did not previously exist.  *State v. School District No. 9*, 8 Neb., 92.

As it does not appear that the requisite number of names was signed to said petition at the time the board refused to call said election, the writ must be denied.

WRIT DENIED.