A. J. EGGLESTON, *et al.*, v. THE STATE OF KANSAS, *on the relation of D. C. Lewis, County Attorney.*

1. ELECTION; *Canvassing Board; Knowledge of Request in Petition.* ·Where a petition is filed with the county clerk and presented to the board of county commissioners while in session as a canvassing board, said commissioners would have no authority to entertain or act on the said petition, but the knowledge so received of the filing of the petition with the clerk, and what it contains, could not be disregarded by them; and the fact that the petition was not presented to the board when regularly in session as a board of county commissioners, would be no excuse for them to say that the board had no knowledge of a request contained in said petition.

2. PETITION — *Signer, to Know Contents.* One who signs a petition must read and determine for himself, and it is no excuse for him, after the petition has been acted upon, to say he did not know what the petition contained. If he can read, he must do so, or be prevented from so doing; or the circumstances must be such as to show the perpetration of a fraud which by the exercise of reasonable caution and judgment could not have been detected; or such other peculiar circumstances as a court of equity would deem a sufficient excuse.

*Error from Pratt District Court.*

THIS is the second time this case has been in this court. (34 Kas. 714.) When here before, the order setting aside the temporary injunction was reversed, and the cause remanded for further proceedings in accordance with the views then expressed. At the December Term, 1886, of the district court of Pratt county the cause came on for final hearing, and the temporary injunction was made perpetual, enjoining the county commissioners of Pratt county from canvassing the vote polled on October 1, 1885, upon the proposition for the relocation of the county seat of that county. The facts are substantially the same as when the case was here before. The defendants bring the case here.

*Huston & Parrish,* and *M. P. Simpson,* for plaintiffs in error.

*S. B. Bradford,* attorney general, *E. A. Austin,* and *Gillett & Whitelaw,* for defendant in error.

Opinion by CLOGSTON, C.: At the trial the parties entered into the following stipulation:

"It is hereby stipulated and agreed by and between the parties hereto, that if the names of the 332 persons which appear on 'Exhibits CC and DD,' (to wit, 278 on 'Exhibit CC' and 54 on 'Exhibit DD,') annexed to and made a part of the plaintiff's second amended petition, or amendment to plaintiff's original petition, and which names, it is agreed, appeared on the petition calling an election to relocate the county seat from Iuka to Pratt, in said county, and which names also appear on the petition in evidence, praying a relocation of the county seat from Iuka to the city of Saratoga, in said county, are retained and counted on the petition praying for a relocation of said county seat from the town of Iuka to the said city of Pratt, then the said Pratt petition did and does contain three-fifths of the legal electors of Pratt county, as appeared, and now appear, on the assessment rolls of the several township and city assessors of said county at the last assessment before said petition was presented to the board of county commissioners in the year 1885, and was and is a legal petition. But if said 332 names mentioned in said exhibits, which are on said petitions, are stricken off of said Pratt petition, and not counted thereon by reason of the following clause, which appears in said Saratoga petition, to wit, 'We further petition your honorable board to erase and strike off our names from any and all petitions coming before your board other than this one petition praying a removal of said county seat to any place, hereby revoking any and all petitions on this subject heretofore signed by us,' then the petition praying for a relocation of the county seat from the town of Iuka to the city of Pratt did not, and does not, without said names, contain three-fifths of the legal electors, as appears on the several assessment rolls of the several township and city assessors of said county, next before the presentation of said petition to said board of county commissioners, in the year 1885, and was not and is not a legal petition."

This stipulation eliminates all questions of fact, except one: Did the Pratt petition contain the requisite number of names to authorize the county commissioners to order the election? Plaintiff below gave in evidence the Saratoga petition, which, when compared with the Pratt petition, showed that 332

petitioners had signed their names on both petitions. The Saratoga petition was dated August 19th, and the Pratt petition was filed with the board on or before August 13th. In the absence of other proof, a petition will be presumed to have been signed at or after its date. This establishes the fact that the Saratoga petition was signed last; therefore the request therein contained was the last expression of the petitioners to the county commissioners. The defendants, to destroy the effect of the request contained in the petition, to have their names taken off from all other petitions relating to the removal of the county seat, attempted to show that the Saratoga petition was not presented to the board of commissioners, and that at the time of calling the election they did not know that that petition, presented to the board, contained that request. This claim, if true, would have been a complete answer, but at the trial it was claimed by the plaintiff that the Saratoga petition was presented to the board while in session as a board of canvassers, by Mr. Whitelaw, representing the Saratoga petition, and that he read the petition to the board and urged it to take action thereon. This was established by some four witnesses, and, on the part of the defendants, denied by the board of county commissioners, county clerk, and several others. This then became a disputed question, and was submitted to the court, which found for the plaintiff. This settles this question here, for where there was evidence offered tending to sustain the finding of the court, it will not be disturbed here. It is not for this court to again weigh the evidence. It may be that on this question the preponderance was with the defendants, but the trial court had better opportunities of learning the truth, as the witnesses were before the court, and the appearance and demeanor of witnesses on the stand may be such that greater weight should be given some witnesses than others.

Again, to avoid the effect of the request contained in the petition, the defendants produced John Stewart as a witness, and asked him the following questions:

" I will ask you if you signed a request to have your name taken off the Pratt petition at any time.

"State if it was represented to you at the time you signed the Saratoga petition that it also contained a request asking your name to be taken off the Pratt petition."

Which questions were objected to by the plaintiff as being immaterial, and the objections were by the court sustained, and defendants excepted. Defendants also called as a witness, Alfred Fox, and propounded to him the following questions:

"Did you ever request the county commissioners to take your name from the Pratt Center petition, or authorize anyone to make that request for you?

"Did your ever at any time sign the Saratoga petition that contained a written request to have the county commissioners strike your name from the Pratt City petition?

"If you ever authorized the county commissioners in writing, or authorized them to strike your name from the Pratt City petition, or authorized any other person to do so for you, you may state when it was."

Which questions were objected to, and the objections were sustained by the court; to which the defendants excepted. Defendants then offered to prove by said witness and 331 others, the following:

"The defendants offer to prove by Alfred Fox and 331 others, whose names appear on exhibits 'CC' and 'DD,' attached to plaintiff's second amended petition, the following facts, viz.: That they did not know at the time they signed the Saratoga petition, or at any time on or before September 1, 1885, that the Saratoga petition contained the words following, to wit: 'We further petition your honorable board to erase and strike off our names from any and all petitions coming before your board, other than this one petition, praying for the removal of said county seat to any place, hereby revoking any and all petitions on this subject heretofore signed by us,' or that said petition contained words to the same effect; and that they did not request the commissioners, or board of county commissioners, in writing or otherwise, to strike their names from the Pratt Center petition, or authorize any other person to do so for them."

Plaintiff objected to the introduction of this evidence, for the reason that it was incompetent, irrelevant, and immaterial,

and the court sustained the objection.   The court in sustaining said objection stated to the defendants as follows:

"The court does not refuse to allow the defendants to prove any conversation had, or anything done, in relation to the Saratoga petition between these witnesses and the persons who represented the petition; nor does the court refuse to allow any witness to testify regarding any signature on the Saratoga petition which purports to be the signature of the witness."

Plaintiffs in error now insist that the exclusion of this evidence was error.   We think not.   The question propounded to the witness was in terms asking for a conclusion, and not for a fact.   They might show the facts, how and under what circumstances they signed the petition, and then it was for the court to determine whether such circumstances were a sufficient excuse for not having read and known what they were signing. This the court was willing they should do.   One who signs a petition must read and determine for himself, and it is no excuse for him after the petition has been acted upon to say, "I didn't know what the petition contained."   If he can read, he must do so, or be prevented from so doing; or the circumstances must be such as to show the perpetration of a fraud which by the exercise of reasonable caution and judgment could not have been detected; or such other peculiar circumstances as a court of equity would deem a sufficient excuse.

Plaintiffs in error insist that the presentation of a petition to the board while in session as a board of canvassers is not a sufficient presentation to the board of county commissioners. This, perhaps, is true so far as any action on the petition could be taken by the board while in session as a board of canvassers. The board in this instance acted correctly.   It did not meet to transact the ordinary business of the county, and its refusal to entertain or act upon the Saratoga petition was right and proper; but the knowledge it then received that such a petition was filed with the clerk of the board, and that it contained a request to have certain names thereon taken off from all other petitions asking for an election for a relocation of the county seat, could not be disregarded, whether it reached the board

while. acting in one capacity or another.   It was a fact that
the board knew, and when it met it was no excuse for it to
say that a knowledge of this petition, and what it contained,
came to it while acting as a board of canvassers.   A desire to
ascertain the true will and wish of the people of that county
on the question then before it, was its first duty; its prefer-
ence for a county seat afterward.

It is recommended that the judgment of the court below be
affirmed.

By the Court: It is so ordered.

All the Justices concurring.