LA LONDE, Appellant, vs. THE BOARD OF SUPERVISORS OF
BARRON COUNTY and others, Respondents.

*October 6 — October 20, 1891.*

*Removal of county seat: Sufficiency of petition: Withdrawal of signa-
tures.*

1. Under sec. 655, S. & B. Ann. Stats., the presentation of a petition
signed by two fifths of the legal voters of the county is necessary
to warrant the county board in submitting to the voters the ques-
tion of removal of the county seat; and the board may properly
take a reasonable time, after the filing of the petition, to ascertain,
by comparison with the poll-lists, whether it has the requisite num-
ber of signatures.

2. Before final action by the board on such a petition, voters who have
signed it may withdraw their names; and if such withdrawal leaves
the petition without the required number of signatures the board
has no jurisdiction to submit the question of removal.

APPEAL from the Circuit Court for *Barron* County.

This action was commenced November 20, 1890, by *John
La Londe,* a resident voter, freeholder, and tax-payer of
Barron county, in his own behalf and in behalf of all others
of like interest with himself, to restrain the board of super-
visors of said county, its successors, servants, and agents,
from incurring any expense, or appropriating any money,
or letting any contract, for building or constructing a
county jail or other county building in said county until
after the question of the removal of the county seat from
the city of Barron to the city of Rice Lake should have
been fully determined, or until further order of the court,
and to restrain the chairman of said board of supervisors
and the county clerk from issuing any county order for the
payment of money for any such purpose. A temporary
injunctional order was granted.

It appeared upon the trial, and the circuit court found,
among other things, that at a meeting of the board of

supervisors convened on the second Tuesday of November, 1890, a petition was presented, signed by the plaintiff and others, asking for a change of the county seat from Barron to Rice Lake; that the petition was referred to a committee; that on November 14 a majority of the committee asked for further time to make a comparison of the names appearing on the petition with the proper poll-lists, and time was accordingly given such committee until a meeting of the board to be held on January 8, 1891; that after the petition was presented, but before the vote was taken giving the committee until January 8 to report, the board, by a vote of fourteen to eleven, adopted a resolution appointing a committee and giving to it full power and instructions to procure the building of a jail at the county seat within one year, and appropriating money therefor; that another resolution was adopted authorizing the chairman and clerk of the board to issue county orders to the amount of said appropriation; that, without waiting until the committee having in charge said petition could make a report and final action be had thereon at the meeting of the board to be held on January 8, 1891, the building committee appointed by the aforesaid resolution proceeded to advertise for bids for furnishing material for the construction of said jail, " and that their action in this regard, in proceeding with such haste, had for its principal purpose the defeat of the proceedings looking to a change in the location of the county seat."

The trial court further found that the county board convened, pursuant to adjournment, on January 8, 1891, and that on January 9 the committee having charge of the petition made a report showing, among other things, that after striking from the petition the names of 196 persons who had requested that their names be so stricken therefrom, the remaining signatures of persons whose names appeared upon the proper poll-lists were insufficient to authorize the

La Londe vs. The Board of Supervisors of Barron County and others.

submission to the voters of the question of the removal of the county seat; that the committee recommended that the prayer of the petition be denied; and that this report was, on the same day, adopted by the board.

The trial court also found the fact to be that if the county board had the right to allow persons who had signed the petition to withdraw their names therefrom, or to strike such names from the petition when requested so to do by the signers, then there were not a sufficient number of persons whose names were before the board as petitioners on January 9, 1891, to warrant the board in submitting the question of changing the location of the county seat.

As conclusions of law the court found, among other things, that the county board possessed the power to strike from the petition the names of those who had so requested; that this action was properly instituted, so far as its purpose was to prevent the county board from incurring the expense of a new jail at Barron before the sufficiency of the petition was finally and properly determined, and until the result of the vote on the proposition was determined, in case the petition was found sufficient; that the board having, since the commencement of the action, finally and properly disposed of the question raised by the filing of the petition, the plaintiff is not entitled to any relief; and, the plaintiff having proceeded with the cause at great expense to the defendants after the board had finally disposed of the petition, that neither party should recover costs.

From a judgment dismissing the complaint the plaintiff appeals.

*W. F. Bailey*, for the appellant.

For the respondents there was a brief by *J. F. Coe*, attorney, and *Pinney & Sanborn*, of counsel, and oral argument by *Mr. Coe* and *Mr. S. U. Pinney*: To the point that allegations of fraudulent, partisan, or improper mo-

La Londe vs. The Board of Supervisors of Barron County and others.

tives would not justify judicial interference with the acts of the county board, they cited Cooley, Const. Law, 225, 226; *Farmers' L. & T. Co. v. C., P. & S. R. Co.* 39 Fed. Rep. 143, 153–5; *Soon Hing v. Crowley,* 113 U. S. 703–4, 710; *Sunbury & E. R. Co. v. Cooper,* 33 Pa. St. 278, 283; Dillon, Mun. Corp. sec. 311; *Freeport v. Marks,* 59 Pa. St. 253, 257; *Att'y Gen. v. Lake Co.* 33 Mich. 289, 292.

COLE, C. J. In order to justify the county board of supervisors, under the statute, in submitting the question of the removal of the county seat to a vote, there must be presented to it a petition, signed by two fifths of the legal voters of the county, asking for a change of the county seat. Such a petition is jurisdictional, and absolutely essential to warrant action on the subject. The statute clearly points out how the board shall ascertain and determine whether the petition contains the requisite number of petitioners. If, by examination of the poll-list of the last previous general election held in the county, it is found that the names of two fifths of the voters have been signed to the petition, it is the duty of the board to submit the question; otherwise, the board has no power to submit it. This is the plain meaning and intent of the statute. Sec. 655, S. & B. Ann. Stats.[1]

The statute implies that the specified number of names shall appear upon the petition when the board takes action and submits the question. How far the board can go in an

---

[1] Sec. 655, S. & B. Ann. Stats., provides: "Whenever two fifths of the legal voters of any county, to be determined by the poll-lists of the last previous general election held in such county, the names of which voters shall each appear on some one of the poll-lists of said election, shall present to the board of supervisors a petition, signed by them, asking a change of the county seat to some other place, such place to be designated in such petition, it shall be the duty of such board to submit the question of removal of the county seat to a vote of the qualified voters of the county in the manner herein provided. . . ." — REP.

La Londe vs. The Board of Supervisors of Barron County and others.

inquiry as to the genuineness of the signatures on the petition is a question not involved here. If the names of the signers of the petition are found on some one of the poll-lists, the presumption would be that the petition was what it purported to be,— a genuine document; — certainly until that presumption was rebutted or the contrary shown; but, as we have said, the names of two fifths of the legal voters, as shown by the poll-lists, must appear on the petition when the board takes final action. This is a jurisdictional fact, and must exist before the board is clothed with authority to submit the question of the removal of the county seat to a vote of the electors of the county. From the nature of the case, the board must have a reasonable time to examine the poll-lists and ascertain whether the requisite two fifths have signed the petition. This is very obvious.

It appears from the finding of the court below that when the petition was presented to the board it was signed, or purported to be signed, by the requisite two fifths of the legal voters. The board referred the petition to a committee, to examine the poll-lists and make a comparison of the names of the signers of the petition with such lists. This was a very proper proceeding, and was in accord with the intention of the statute, which contemplates such an investigation. On the 14th of November the majority of the committee asked for further time to make the examination, and the request was granted. The board adjourned its session from November till the following January, to give the committee time to make the proper comparison of names, and to report to that body. In this proceeding there is nothing which is justly subject to criticism or censure.

The court below further finds that, prior to the 1st of January, 1891, the committee having the petition in charge completed its labors, so far as related to the comparing the names on the poll-list of the previous election with the names on the petition, when it appeared that there were

2,573 names on such poll-list; that 1,030 names were required on the petition to warrant the board in submitting the question of a change to a vote of the electors, and that certain signers of the petition had withdrawn their names from the same, so that, when the board finally acted upon the petition, it did not contain the required number of names to warrant a submission.

The learned circuit judge held that the board had the right to allow persons who had signed the petition to withdraw their names therefrom, or to strike their names from the petition, when requested so to do by the signers before the petition was finally acted upon by the board. Was that a correct view of the matter? We think it was, and that it was in accord with reason and common sense. For what valid objection is there, either in law or on grounds of public policy, against allowing a person who has signed a petition asking for a removal of the county seat from withdrawing his name from the petition before it is acted upon by the board? As the learned counsel for the defendants say, a person may have been deceived or entrapped, or though inadvertence or thoughtlessness may have signed such a petition, and, on reflection and before action is taken on it, may desire to correct his action and withdraw his name. Why should he not have the right and privilege of doing so? An intelligent man, acting deliberately and understandingly, may change his mind on such a question, and conclude he has made a mistake in asking for a change of the county seat, and that the public interest will be promoted by having the county seat remain where it is. All this is plain and obvious to any one reflecting on the subject. The statute goes upon the theory that two fifths of the legal voters desire and ask for a change and that the question be submitted to a vote of the electors, manifesting their wish by signing their petition for that purpose, and that this wish continues to the time the board acts

La Londe vs. The Board of Supervisors of Barron County and others.

upon the petition. The laws goes upon that theory. It is not its intention or purpose to subject the people of the county to the expense and excitement of an election unless the request of two fifths of the legal voters favor and ask for the same, and there is no good reason why a person who has voluntarily signed the petition should not have the right to withdraw his name before the board finally acts upon it. If he does so withdraw it, or ask that it be stricken from the petition, it is plain it cannot be counted to make up the specified number.

This conclusion is the only one we are able to entertain under our statute, and our view upon the question is sustained by the decisions in other states on similar or analogous provisions. *Hays v. Jones*, 27 Ohio St. 218; *Dutten v. Hanover*, 42 Ohio St. 215; *Hord v. Elliott*, 33 Ind. 220; *Mayor, etc. of Kokomo v. State*, 57 Ind. 152; *Black v. Campbell*, 112 Ind. 122; *State v. Eggleston*, 34 Kan. 714; *S. C. 37* Kan. 426; *State v. Nemaha Co.* 10 Neb. 32.

Without considering the other points discussed on the argument, we think the bill was properly dismissed because, when the board was called upon for final action on the petition on the 9th of January, 1891, it did not contain a sufficient number of petitioners to warrant a submission of the question of changing the location of the county seat to a vote of the electors of the county. Of course the injunction falls with the dismissal of the bill.

*By the Court.*— The judgment of the circuit court is affirmed.