STATE ex rel. ANDREWS v. BOYDEN, County Commis'r et al.

Const. art. 9, § 3, provides that, whenever a majority of the voters of any county shall petition the county commissioners to change the location of the county seat, the board shall submit the question at the next general election. Held that, at any time before a valid order was entered granting a petition filed under the constitutional provision, a signer of the petition had a right to withdraw his name, after which it could not be counted to make up the specified number.

(Opinion filed, Aug. 11, 1906.)

Appeal from Circuit Court, Charles Mix County. Hon. E. G. Smith, Judge.

Mandamus by the state, on the relation of T. E. Andrews, to compel O. L. Boyden and others, as county commissioners of Charles Mix county, and the board of county commissioners of such county and another, as county auditor, to submit the question of changing the county seat at a general election. From a judgment dismissing the application, relator appeals. Affirmed.

*G. P. Harben,* for appellant.

In determining whether a majority of the legal voters of the county had signed the petition the Board exercised judicial function. It exercised quasi-judicial powers involving judgment and discretion. Champion v. Board, 5 Dak. 416; State v. Board, 54 Pac. 939; Herrick v. Carpenter, 6 N. W. 574; Ellis v. Karl, 7 Neb. 381; Miller v. Jones, 80 Ala. 89; Board v. Markle, 46 Ind. 96. The power does not exist in a petitioner to withdraw his name from a petition, when the right to withdraw is not given directly by statute. Loomis v. Baily, 45 Iowa 400.

*French & Orvis,* for respondent.

The power does exist in a petitioner to withdraw his name from a petition, when the right to withdraw is not given by statute. Board ex rel. Stanley v. Elliott, 33 Ind. 220; Ayres v. Moan, 57 N. W. 830; State v. Nchama County, 4 N. W. 373; Crews v. Coffman, 55 N. W. 265.

HANEY, J. This is an appeal by the relator from a judgment dismissing his application for a peremptory writ of mandamus commanding the defendants, as county commissioners, to submit the question of changing the location of the county seat at the general election of 1904. The facts as found by the circuit court are substantially as follows: On January 4, 1904, T. E. Andrews presented a petition to the board at its regular session, signed by 1,528 persons, asking to move the county seat from Wheeler to Platte, and for an order submitting the proposition at the next general election. On the same day J. W. Lindsay filed a statement and asked for time in which purported signers of the Platte petition might be heard. Such statement was sworn to and stated that a large number had signed the Platte petition under a misapprehension of facts, giving particulars wherein they had been misled and the names of the signers so misled. Such statement also alleged upon information and belief that a large number of the signers of such petition, more than enough to reduce the number below a majority of the voters of the county, were induced to sign it by reason of false and fraudulent representations made by persons circulating the same. It also contained the allegation that several hundred signers of such petition had already signed a petition to the

board, asking and demanding that their names be withdrawn from the Platte petition, and that a large number of other persons who had signed it would also petition to have their names withdrawn therefrom, because of such false and fraudulent representations. It was thereupon agreed by and between the board, the representatives of Platte, and the representatives of Geddes, that before the board would act upon such petition, Lindsay and Ward, representatives of Geddes, would be given an opportunity to prove the allegations of the above-mentioned statement. On January 6th the board proceeded to examine the Platte petition and found the same to be signed by 1,523 men, of which number 1,506 were found to be legal voters of the county, and the board also determined that 1,506 signers of such petition constituted a majority of all the legal voters of the county, but this last finding was omitted from its record. Thereupon the representatives of Platte demanded that the board make an order as prayed in their petition, which was refused as not in accordance with the agreement to postpone action until Lindsay and Ward should have an opportunity to be heard, and thereupon the board directed notice to be served on Lindsay and Ward that they would be heard at 1 o'clock p. m. on January 7th. Further proceedings having been suspended by reason of a temporary injunction, which was subsequently dissolved, on January 13th, an agreement was reached between parties representing Platte and Geddes that those representing the latter should on the following day file their withdrawals from the Platte petition and that the board would take no action whatever until January 21st at 1 o'clock p. m. On January 14th, a remonstrance against granting the Platte petition, signed by 573 voters of the county, who previously had signed the Platte petition, was filed with the county auditor, the board being then in session, in which it was stated that the persons signing such remonstrance withdrew their names from the Platte petition, and at the same time a petition purporting to be signed by 1,804 legal voters of the county, asking for the removal of the county seat from Wheeler to Geddes and for an order submitting the proposition at the next general election, was filed. On the same day another similar remonstrance and withdrawal, signed by six voters who previously had signed the Platte petition, was filed.

On January 20th, the circuit court issued an alternative writ of mandamus commanding the board to grant the Platte petition or show cause on February 5th why it had not done so. This writ and the affidavit on which it was based were silent as to the aforesaid remonstrances and withdrawals. It was served January 21st, on which day the following motion was made and carried: "That board obey the order of E. G. Smith, judge of the circuit court, and the petition of T. E. Andrews and others, for removal of the county seat from Wheeler to town of Platte, be granted, and county auditor be instructed to at the proper time have the necessary ballots prepared to submit this proposition to the voters of this county, at the next general election." On January 26th, a writ of certiorari was issued by the circuit court commanding the board and auditor to certify and return all proceedings of the board concerning the removal of the county seat from Wheeler to Platte; all proceedings in regard to the petition for removal of the county seat from Wheeler to Geddes; and all papers filed and proceedings had prior to and including January 22nd. Return to this writ having been made on March 25th, the circuit court rendered its judgment annulling, vacating, and setting aside the order of the board granting the Platte petition and remanding all matters connected therewith to the board for such further proceedings as might be proper and regular under the authority of the board. Thereafter, on April 7th, the Platte petition was again considered by the board, together with all withdrawals therefrom, and it was found and determined that such petition, not counting withdrawals, then contained the names of 1,566 voters, 60 of these having been filed April 5th, and that 514 persons who had previously signed such petition had withdrawn therefrom, leaving the names of only 1,052 voters thereon. At the same time the board found and determined that there were not less than 2,907 legal voters in the county, that the number of legal voters remaining on the Platte petition, after counting withdrawals, was less than a majority of all the legal voters of the county, and refused to grant such petition. On the same day the board proceeded to consider the Geddes petition and found and determined that it was signed by 1,855 legal voters of the county, 57 of whom filed their petition April 5th; that there

had been no withdrawals therefrom; that 1,455 was a majority of all the legal voters of the county; and thereupon the board made this order: "It is therefore ordered that the question of the removal of the county seat from the said town of Wheeler, in said Charles Mix county, to the town of Geddes, in said county, be submitted to the electors of said Charles Mix county at the next general election to be held in this county, and that the auditor be instructed to prepare at the proper time ballots so as to give the voters of said Charles Mix county a chance to vote on said proposition." No appeal from the order of the board denying the Platte petition or from its order granting the Geddes petition, was taken, and no proceedings of any kind instituted for the purpose of reviewing its action in either of such matters. After the certiorari case above mentioned was decided, the circuit court rendered judgment granting a peremptory writ of mandamus commanding the board to so amend its records as to show "that on January 6, 1904, the board found and determined that the Platte petition contained a majority of the legal voters of said county," which judgment was affirmed by this court on September 12, 1904. State v. Boyden, 18 S. D. 388, 103 N. W. 763.

The law governing the official conduct of the defendants is thus prescribed by the state Constitution: "Whenever a majority of the legal voters of any organized county shall petition the board to change the location of the county seat which has once been located by a majority vote, specifying the place to which it is to be changed, said board shall submit the same to the people of the said county at the next general election." Article 9, § 3. The established rules of construction applicable to statutes also apply to the construction of Constitutions. 8 Cyc. 729; Davenport v. Elrod, 20 S. D. 567, 107 N. W. 833. Under statutes defining the duty of county commissioners with respect to submitting the question of relocating county seats, in language substantially the same as that employed in our Constitution, it has been held that the signers of such petitions have a right to withdraw their names at any time before final action has been taken thereon, and that withdrawn names cannot be counted to make a valid petition. La Londe v. Board, 49 N. W. 960; State v. Nemaha County, 4 N. W. 473;

State v. Eggleston, 10 Pac. 3. In La Londe v. Board, supra, the court said: "The learned circuit judge held that the board had the right to allow persons who had signed the petition to withdraw their names therefrom, or to strike their names from the petition, when requested so to do by the signers, before the petition was finally acted upon by the board. Was that a correct view of the matter? We think it was, and that it was in accord with reason and common sense. For what valid objection is there, either in law or on grounds of public policy, against allowing a person who has signed a petition asking for a removal of the county seat from withdrawing his name from the petition before it is acted upon by the board? As the learned counsel for the defendants say, a person may have been deceived or entrapped, or through inadvertence or thoughtlessness may have signed such a petition, and, on reflection, and before action is taken on it, may desire to correct his action, and withdraw his name. Why should he not have the right and privilege of doing so? An intelligent man, acting deliberately and understandingly, may change his mind on such a question, and conclude he has made a mistake in asking for a change of the county seat, and that the public interest will be promoted by having the county seat remain where it is. All this is plain and obvious to any one reflecting on the subject. The statute goes upon the theory that two-fifths of the legal voters desire and ask for a change, and that the question be submitted to a vote of the electors, manifesting their wish by signing their petition for that purpose, and that this wish continues to the time the board acts upon the petition. The law goes upon that theory. It is not its intention or purpose to subject the people of the county to the expense and excitement of an election unless the request of two-fifths of the legal voters favor and ask for the same, and there is no good reason why a person who has voluntarily signed the petition should not have the right to withdraw his name before the board finally acts upon it. If he does so withdraw it, or ask that it be stricken from the petition, it is plain it cannot be counted to make up the specified number. This conclusion is the only one we are able to entertain under our statute, and our view upon the question is sustained by the de-

cisions in other states on similar or analogous provisions. Hays v. Jones, 27 Ohio St. 218; Dutten v. Village of Hanover, 42 Ohio St. 215; Hord v. Elliott, 33 Ind. 220; Mayor, etc., v. State, 57 Ind. 152; Black v. Campbell, 112 Ind. 122, 13 N. E. 409; State v. Eggleston, 34 Kan. 714, 10 Pac. 3; Id., 37 Kan. 426, 15 Pac. 608; State v. Nemaha Co., 10 Neb. 32, 4 N. W. 373." And in State v. Nemaha County, supra, this language is used: "Any or all of the signers of such a petition may withdraw their names at any time before it is presented to the board of county commissioners. Their action in signing the same is entirely voluntary, and if they withdraw their names, either directly by erasure from the petition, or by signing a remonstrance against calling said election, their names cannot be counted by the commissioners as petitioners. And if the parties have been induced by misrepresentations to sign such petition, they may undoubtedly go before the board and state the facts as to such misrepresentations, and demand that their names be stricken from the petition, or not counted as petitioners. The commissioners should not call an election for such purpose unless they find at the time of calling said election that more than three-fifths of the voters, as shown by the return of the last general election, are then petitioners for such election. It it not the intention of the law to subject the people of a county to expense, annoyance, and animosities not infrequently attending an election for the relocation of a county seat, unless it appears that a requisite number of voters are, at the time of calling the same, in favor of such election. The petition is only a means of determining that at least three-fifths of the legal voters of the county are in favor of the relocation of a county seat, and that an election called for the purpose of submitting such question to the people of the county, will, in all probability, result in the relocation of the county seat." On January 21st, when the board made the order granting the Platte petition, which was subsequently annulled by the circuit court, such petition, by reason of withdrawals, no longer contained the names of a majority of the legal voters of the county and there was a petition on file containing the names of a majority of the legal voters asking to have the county seat removed to Geddes.

But one proposition, specifying the place to which the county seat should be removed, could be submitted. Therefore the action of the board in granting the Platte petition was clearly erroneous, if not void, and the Geddes petition should have been granted at that time. Furthermore, the effect of the judgment of the circuit court which annulled the order granting the Platte petition cannot be avoided. Such judgment remanded the several petitions for final action, which properly resulted in the granting of the Geddes petition. This is clearly so, notwithstanding the board was required to record its determination that the Platte petition originally contained a majority of the legal voters of the county. Final action was not taken until a valid order was entered granting one or the other of the pending petitions. Until that was done the board possessed the power to allow withdrawals, to strike illegal names from either petition and to reconsider any action previously taken. Having ultimately ascertained that a majority desired to have the Geddes proposition submitted, it was impossible for the Platte proposition to be submitted at the 1904 general election, and the granting of an application for a peremptory writ requiring such submission would have been clearly erroneous.

The judgment of the circuit court is affirmed.