STATE OF SOUTH DAKOTA, ex rel WILLIAMS, Plaintiff, v. BATEMAN, et al, Defendants.

(244 N. W. 357.)

(File No. 7485. Opinion filed October 4, 1932.)

*Martens & Goldsmith,* of Pierre, for Plaintiff.

*H. P. Gilchrist,* of Kadoka, and *H. F. Fellows,* of Rapid City, for Defendants.

CAMPBELL, P. J. Sections 5755 to 5769, R. C. 1919, provide a means for submitting to the electors of two or more counties under certain circumstances the question of the consolidation of such counties or the change of boundaries between them. Section 5755 reads as follows: "Whenever not less than one-third of the electors, based upon the total vote for governor at the last preceding election, of each of two or more adjoining counties of this state, shall petition the board of county commissioners of their respective counties that an election be held to determine the question of changing the boundary lines or of the consolidation of two or more counties, stating in such petition the names of the counties to be consolidated or boundary lines to be changed, such boards. of county commissioners shall, at their regular July meeting succeeding the presentation of such petitions, provide that the question of consolidation of the counties or the changing of the boundary lines of such counties shall be submitted to a vote at the next general election succeeding the presentation of such petitions: Provided, such petitions shall have been filed with the county auditors of such counties prior to the first day of the regular July meeting of the board of county commissioners."

On July 2, 1932, 665 electors of Haakon county (610 being required for an effective petition under the above statute) and 399 electors of Jackson county (343 being required under the statute) filed in their respective counties their petitions asking that the question of the consolidation of Haakon and Jackson counties be submitted to the electors thereof at the next general election and that

the location of the county seat of the consolidated county should be likewise determined. July 3, 1932, fell upon Sunday. July 4, of course, was a legal holiday, and the first day of the regular July meeting of the boards of county commissioners of Jackson and Haakon counties was Tuesday, July 5. The auditors of the two counties transmitted each to the other certified copies of the petitions filed with them respectively, pursuant to section 5756, R. C. 1919. Late in the afternoon of the day the petitions were filed and after the customary closing hour of the county auditor's office, 81 signers of the Jackson county petition filed in the office of the auditor of that county a document signed by them purporting to be a remonstrance against the submission of the consolidation question and a withdrawal of their names from the petition for the calling of the election. On Thursday, July 7, the county commissioners of Jackson county in regular session refused to take the steps necessary to submit the consolidation question at the next general election; their action in the matter being shown by their records as follows:

"Petitions having been filed with County Auditor of Jackson County asking that there be submitted to the voters of Jackson County at the next regular election the question as to whether or not the counties of Jackson and Haakon be consolidated which said petitions contained 399 names and 81 of the signers or said petitions having withdrawn their names before the final order was entered granting the petition.

"It appearing to the board that the required number of signers to submit said question to the voters is 343 and that there now remain 318 names on said petitions which number is insufficient.

"Moved by Bateman, seconded by Addison that said question be not submitted to the voters at the next general election on account of the insufficiency of said petitions.

"Vote by roll call—Nielson Aye—Bateman Aye—Addison Aye. "Carried."

The board of county commissioners of Haakon county apparently took no action one way or the other with reference to the matter.

Under those circumstances, the relator here, one of the petitioners, instituted this original proceeding in mandamus to require

the boards of county commissioners of Jackson and Haakon counties to take the necessary steps to submit to the electors of those counties at the next general election the question of consolidation. The alternative writ issued out of this court on September 10th. Defendants commissioners and auditor of Haakon county made return to the alternative writ on September 12, showing that on September 7, and prior to the issuance of the alternative write, they had adopted a resolution submitting the question of consolidation to the voters of Haakon county at the on-coming November general election. We need not therefore be further concerned with those defendants in this proceeding. The defendants commissioners and auditor of Jackson county, however, made return and answer setting forth the facts substantially as above outlined and maintaining the validity of the attempted withdrawal of the 81 names from the petition, as a result whereof the petitioners prior to any action or time for action on their petition, were reduced in number below the necessary one-third, and contending that, under those circumstances, the question should not be submitted. The matter was orally argued and memorandum briefs filed on the return date, September 27th, and the case is now for our determination.

 Under the statute the county commissioners are vested with no discretion as to whether or not they will submit the question of consolidation at the next general election. Whenever sufficient petitions are filed the commissioners are under a mandatory duty. Their action or inaction in that regard, therefore may be controlled by mandamus. Far., etc., Bk. v. Hirning, 42 S. D. 52, 172 N. W. 931. The sufficiency of the Haakon county petition stands unchallenged, and the only question raised as to the Jackson county petition is as to the effect of the attempted withdrawal of 81 names therefrom at the time and under the circumstances above set forth.

Questions as to the right to withdraw from petitions and ancillary questions as to the time, manner, and method of exercising the right when it exists have been productive of no little confusion in the decisons. Support may be found in the language of the reports for almost any view. Numerous cases are collected in notes in 11 L. R. A. (N. S.) 372, 35 L. R. A. (N. S.) 1113, 15 Ann. Cas. 1125, and 26 Ann. Cas. 43. The matter has been several times

before this court. See State ex rel. Andrews v. Boyden (1906) 21 S. D. 6, 108 N. W. 897, 15 Ann. Cas. 1122; State ex rel, Ketterling v. Gregory (1910) 26 S. D. 13, 127 N. W. 733, Ann. Cas. 1913A, 40; Davis v. Cramer (1916) 38 S. D. 64, 159 N. W. 886; St. Lawrence Ind. Sch. Dist. v. Bd. of Ed. (1931) 58 S. D. 287, 235 N. W. 697.

While reconciliation of all the decisions would doubtless be impossible, nevertheless we think that much of the apparent conflict disappears if certain fundamental distinctions are realized and observed.

Two entirely variant types of petition will be found dealt with in the cases. One is a petition to a court or an administrative body or officer asking the exercise of judicial or quasi judicial power directly upon some ultimate issue. We may for convenience speak of this type as the "quasi judicial petition." The other type is illustrated by the petition nominating a candidate for office or the petition for the calling of an election. Here the petition neither seeks nor justifies judicial or quasi judicial action on the part of the body petitioned with reference to any ultimate issue (conceding that in some instances the statute by affirmative provision may require of the administrative officer a quasi judicial determination as to the sufficiency of the petition itself). The sole duty of the officer or administrative body to whom the petition is addressed (assuming the sufficiency of the petition) is to take steps to submit the ultimate issue concerned to vote of the people at an election. This type of petition may be termed for convenience the "political petition."

The most casual consideration demonstrates that these two types of petition are appreciably divergent in their nature, operation, and effect. In the quasi judicial petition the prayer is for direct determination by the petitioned body upon the ultimate issue involved. It may very well be, under such circumstances, that if any petitioner at any time before final action changes his mind as to the advisability of the requested action on the merits, he should be entitled to act accordingly and withdraw his name from the petition and cease to invoke action of the petitioned body in his behalf. He stands in a position very similar to that of a plaintiff in court who, generally speaking and barring the interposition of

a counterclaim, may dismiss his case at his cost any time before the final adjudication thereof. Relief upon the merits which a petitioning party has decided he does not want ought not to be thrust upon him merely because he once asked for it if he comes to a different opinion as to its desirability before his prayer has been granted. An example of this type of what we have here called the quasi judicial petition is St. Lawrence Ind. Sch. Dist. v. Bd. of Ed., supra. There the petition was addressed to the court under chapter 175, Laws 1923, invoking a power which we have held to be quasi judicial (Larsen v. Seneca Sch. Dist., 50 S. D. 444, 210 N. W. 661) asking that certain territory be set out from an independent school district and organized into a common school district. The court was asked to determine the ultimate issue; that is, whether or not the common school district should be created. The statute contemplated the creation of a common school district out of an independent district when (and only when) desired by a majority of the electors and deemed advisable by the court. If it were impossible to withdraw from such a petition after filing, then it might conceivably happen that every petitioner could change his mind as to the advisability of the separation and it might nevertheless be ordered by the court when no one wanted it. At least it might very well happen that the separation would be ordered when the requisite majority no longer desired it. Such a contingency would not be within the purview of the statute and is contrary to established principles. It is just as anomalous as it would be to say that a party plaintiff who has started a lawsuit must accept and abide by a judgment thereon, whether for or against him, notwithstanding the fact that prior to final decision be changed his mind entirely and wished to abandon the whole proceeding.

With reference to what we have called the political petition the situation is entirely different. Take the instant case as an example. The ultimate issue is the consolidation of Haakon and Jackson counties. The petition is addressed to the board of county commissioners, but they are not asked to determine such ultimate issue, nor have they any power so to do. They are asked merely to provide for the submission of the ultimate issue to the only forum which under the law can determine it; that is, to the electors of the counties at the next general election. Assuming that every petitioner was in fact desirous of having the counties consolidated

when the petition for the submission of the question was signed and filed, each petitioner is fully protected if he subsequently changes his opinion as to the merits of the ultimate issue by his right to go to the polls and vote against the consolidation. The calling of the election by the petitioned body is no determination upon the merits, but merely a procedural step in presenting the question to the electors for such determination as a purely political matter. There is still ample opportunity for change of opinion and for defeat of the proposition.

■■ The operation of our political machinery is sufficiently cumbersome at best, and as a matter of sound public policy it ought not to be made too difficult. It is futile and unnecessary, generally speaking, to hold an election for the determination of a question unless there is some substantial division of the public mind thereon. To avoid the nuisance and expense of elections where there is no reasonable or probable likelihood of any change in the existent status of things as a result thereof, it is common practice for Legislatures to attempt so to arrange matters with reference to many political questions that they shall not be submitted to vote unless a desire for such submission exists on the part of some specified fraction or arbitrary number of the electors. The method and manner of evidencing that desire is variously provided by the statutes. Ordinarily, as in the instant statute, the elector is not required to state that he favors a change in the present status, but merely that he desires the submission of the question. The right so to petition is a strictly political right existing by virtue of statute and belongs equally to all electors. Like all other political rights, it should be exercised in good faith and with due regard to the equivalent right of others. It ought not to be capriciously exercised if others are thereby prejudiced or delayed in their rights. The signer of such a petition, if not legally, at least in good conscience, is under some obligation to his co-signers. His strict legal right of withdrawal from the petition may be as broad as his original right to sign it, but we think public policy requires that he be compelled to refrain from exercising his legal right of withdrawal in cases where his fellow signers will be thereby unduly delayed, hindered, and prejudiced in the enjoyment of their political rights which are as broad and as much entitled to protection

as his. It follows that some distinction as to the exercise of the right of withdrawal from political petitions may very well be drawn in accordance with the practical operation and effect of permitting such withdrawal in any given case. If the statute requires, as many do, that upon the filing of a petition with a certain number of signers a special election shall be called and that the given question shall thus be submitted to the electors pursuant to the prayer of the petition, a change of mind as to the desirability of voting on the question and withdrawal from the petition at any time before the election is actually called does not very seriously prejudice the other signers to the petition. If there are still a sufficient number of electors in the district who continue to desire the election held, it is not unduly difficult to secure and file a new petition whereupon the election will be held. If there are not enough electors in the district who continue to desire the holding of the election to permit the filing of a new petition, the election, if held, would accomplish nothing and no one is prejudiced by the failure to call it. But where the statute requires the submission of the question at a general or other election on-coming at a fixed or stated time, and requires the filing of the petition on or before a specified date, or a given number of days in advance of the election date, an attempted withdrawal thereafter presents a materially different situation. In the instant case the statutory provision is for submission at the general election. The requirement is that the petition be filed prior to the first day of the regular July meeting of the county commissioners, which, as we have stated, was Tuesday, July 5. The intervening Sunday and Monday not being business days, the last day for filing was July 2. The attempted withdrawal having been made after business hours on July 2, it was both physically and legally impossible for the remaining petitioners to secure and file a new petition, and if the withdrawal may be supported under these circumstances all possibility of procuring a submission of the question is deferred from the next general election to the general election following, that is, for a full two years, regardless of the fact that the statutory number of electors may now be and may meantime continue desirous of submission.

We think it is not unreasonable to hold, and in fact both good conscience and sound public policy dictate, that the signer of

a purely political petition, such as one nominating a candidate for office or requesting the submission of a question at an election, is under an obligation to his fellow signers not to withdraw his name from such petition at a time when it is too late for the addition of names or the effective filing of a new petition. We have recognized this principle, by dicta at least, in our prior decisions. In State ex rel Andrews v. Boyden, supra, 21 S. D. 6, 108 N. W. 897, 15 Ann. Cas. 1122, on which defendants considerably rely, this court, in substance, announced the broad rule that petitioners for the submission of a question at an election might withdraw their names at any time before final action was taken thereon by the entry of a valid order submitting the question. In that case there was no discussion or consideration of the right of withdrawal under circumstances such that to permit withdrawal would operate to defer submission regardless of the wishes of other electors over a general or stated election. The facts did not require and would not have justified a determination of that question. The petition was filed in January under a constitutional provision (Const. S. D. art. 9, § 3) which required submission of the question at the next general election. Under those facts there was of course ample time after the withdrawals for the filing of a new petition. In State ex rel Ketterling v. Gregory, supra, 26 S. D. 13, 127 N. W. 733, 735, Ann. Cas. 1913A, 40, however, this court held that a petitioner for submission of a question at an annual election under a statute requiring such petition to be filed thirty days before the election could not effectively withdraw his name therefrom during the thirty day period, and the court said: "We are also of the opinion that after the petition was filed with the town clerk, and within 30 days prior to the election, the parties signing the same could not legally withdraw their names from said petition, and that the action of such petitioners in attempting to withdraw their names from the petition within the 30 days prior to the election was void and of no effect. While it may be conceded that the petitioners, prior to the filing of the petition with the town clerk, had the right to withdraw therefrom, it was the duty of the petitioners to exercise such right a sufficient time before the commencement of the 30 days prior to the election to enable the party filing such petition to procure and file a new petition." In Davis v. Cramer, supra, 38 S. D. 64, 159 N. W. 886, 887, where the

annual election was to be held April 18, petition for submission was filed February 26, and resolution submitting the question was adopted on March 14, the court held that the death of one of the signers on March 8, whereby they were reduced below the statutory number, invalidated the petition. The writer of the opinion in that case said, however (concededly by way of dictum), with reference to voluntary withdrawal from such petition, as follows: "In justice to those filing such a petition a withdrawal therefrom should not be recognized after the filing of the petition, and when such withdrawal is sought at a date so late as to amount to a fraud upon those who have relied upon the apparent intent of the signers."

We believe the better reasoning supports the doctrine that, in the case of what we have herein denominated political petitions (as distinguished from what we have termed quasi judicial petitions), a signer cannot withdraw after filing at a time when it is too late to file a new petition and when such withdrawal would necessarily postpone submission of the question to a general or stated election subsequent to the one next ensuing, regardless of the fact that the necessary fraction of the electors continues to desire its present submission. We do not believe withdrawal, under such circumstances, is fraudulent in the sense of actionable legal fraud; but we think that it should be prohibited upon grounds of a sound public policy and to the end that the operation of our political machinery may not be unduly hindered or interfered with. The situation presents something in the general nature of an estoppel by conduct.

We hold therefore in this case that the attempt of the 81 signers to withdraw their names from the petition on the afternoon or evening of July 2 was ineffective for any purpose, and that the petition being valid and sufficient when filed continued effective, notwithstanding said attempted withdrawal, and was and continued to be sufficient to require submission of the question as prayed.

The judgment of this court will be that the peremptory writ issue as prayed, directed to the defendants, commissioners and auditor of Jackson county.

All the Judges concur.