McKILLOP et al., Appellants v. SANBORN COUNTY BOARD OF EDUCATION, Respondents
KLINKNER et al., Defendants in Intervention and Respondents and DEAN, Appellant v. SANBORN COUNTY BOARD OF EDUCATION, Respondent

(105 N.W.2d 671)

(File Nos. 9818, 9824. Opinion filed November 4, 1960)

**Lacey & Parliman,** Sioux Falls, **Morgan & Fuller,** Mitchell, for Plaintiffs and Appellants.

**G. E. Bollinger,** State's Atty. in and for Sanborn County, Woonsocket, for Defendants.

**George Wuest, Danforth, Bleeker & Carlson,** Mitchell, for Defendants in intervention and Respondents.

BIEGELMEIER, J. These appeals concern another controversy over school reorganizations. They involve an

action to enjoin the County Board of Education and county officers from proceeding with the proposed reorganization and an appeal from the County Board's decision by a property owner and taxpayer of a common school district affected, which were consolidated for trial. Sec. 1, Ch. 60, 1957 Session Laws, which amended subsection (1) of Sec. 5, ch. 8 of Ch. 41, 1955 Session Laws, provides that any reorganization by either the electors or the county board must meet specified requirements and limitations, among which is the following:

> "(1) Prior to the final adoption of a county master plan, as provided by law, school districts may reorganize; provided that each such proposed reorganization is approved by the county board of education and a majority of the qualified electors in each school district whose boundaries are affected by such proposed reorganization, as evidenced by a petition for reorganization. Such petition shall be filed with the county auditor who shall certify that signatures on the aforementioned petition represent a majority of the electors in each school district affected;
> *   *   *"

The trial court found that there were 109 qualified electors in Ravenna School District, the only petitions to which serious objection is made. Notwithstanding this, the original petitions from that district contained 53 signatures, the verifications thereto recited there were 93 qualified electors in this district and the county auditor certified that the 53 signatures represented a majority of the electors. These, with petitions containing a majority of the electors of other affected districts, were then presented to the County Board of Education. On March 18, 1959 that board resolved "that in the public interests of the proposed district hereinafter described it shall be as of this day approved to become effective July 1, 1959". This was followed by a legal description of the proposed district. Another resolution directed setting up

the election of school board members of the newly organized district. On April 8, 1959, additional petitions from Ravenna District containing 68 signatures of its qualified electors and from Benedict No. 8 were filed with the Board; the county auditor certified these contained a majority of its electors and this fact is not controverted. The minutes of the County Board on April 8, 1959 show that "Supplemental petitions from Ravenna No. 25  *  *  * were examined" and a resolution was then passed referring to the petitions and declaring that the area described "shall become a school district known as the Artesian Independent District  *  *  *".  After separate trials of the injunction action and Dean appeals the trial court entered two judgments, one denying plaintiff's request for injunction in that action and another in the Dean appeal dismissing the appeal and upholding the reorganization by the County Board. Appellants contend that as the first petitions contained insufficient signatures, the "Supplemental Petitions" could not be considered by the County Board and names cannot be added after final action is taken by it, the reorganization was ineffective. It is conceded that when the Board acted on March 18th the petition had insufficient signatures and its action on that date approving the reorganization was for that reason subject to challenge. As to this respondents in their brief state "the action of the County Board on March 18, 1959, was without jurisdiction and void".

In Dartmouth Savings Bank v. School-Districts, 6 Dak. 332, 43 N.W. 822, 823, our Territorial Supreme Court wrote:

"The petition of a majority of the citizens residing in the district to be affected by the change is the prerequisite to the exercise of his jurisdiction; and  *  *  * we are clearly of the opinion that, in absence of such petition, his action is without jurisdiction, and is void. He is vested with power to act upon presentation of a petition, and not otherwise."

See Tulare Independent School Dist. No. 36 v. Crandon School Dist., 47 S.D. 391, 199 N.W. 451.

That being so, may the additional signatures on the Supplemental Petitions be considered by the Board. Neither appellant nor respondent have cited any case on this subject although many cases of withdrawal of signatures are in the briefs; appellant's brief suggests there are none on the exact point in issue.

■ This court held that whether a petition to form a new school district filed in a court contains the signatures of the required majority is for judicial determination at the hearing thereon, St. Lawrence Independent School District v. Board, 58 S.D. 287, 235 N.W. 697; that until final action names could be withdrawn in some instances, State ex rel. Andrews v. Boyden, 21 S.D. 6, 108 N.W. 897, 15 Ann.Cas. 1122; but not others, State ex rel. Ketterling v. Gregory, 26 S.D. 13, 127 N.W. 733, Ann. Cas.1913A, 40. A determination of the sufficiency of such petitions, at least initially, is for the board addressed unless some other method is fixed by statute. Sec. 1, Ch. 60, Laws of 1957, designates the county auditor as the officer with whom the petition shall be filed and who shall certify, if the fact, that the signatures represent a majority of the electors in each school district affected. The county auditor did so certify as to the first petitions and the County Board acted —or assumed to act—on the basis that they did contain such majority. The statutes do not provide for the withdrawal or addition of signatures, the method of determination or effect of the auditor's certification. See State ex rel. Papke v. Denu, 66 S.D. 282, 281 N.W.822. It may be argued that the certification by the auditor was official action after which no signatures may be withdrawn or added. We believe when the auditor certified to the petitions and the board acted favorably thereon, it was a decision on that requirement and official action which was sufficient to lead others interested to conclude that nothing further remained to be done, that it was final action. See Lynn v. Supple, 166 Ohio St. 154, 140 N.E.2d 555, where the official action was certifying petitions by a clerk to a board. The petitions here had apparently served their purpose and performed their functions. State ex rel. Fenelon v. Graffam, 74 Wis. 643, 43 N.W. 727.

The decision of March 18, 1959 was one from which an appeal was permitted by Sec. 26, ch. 8 of Ch. 41, Laws 1955. In Bradwisch v. Howey, 45 S.D. 110, 186 N.W. 565, the court held statutory proceedings for school consolidation should be strictly complied with. Recently the use of this delegated power by the County Board was said to be "exercised only under the circumstances prescribed". Hofer v. Bridgewater Independent School District, 76 S.D. 483, 81 N.W.2d 300, 302. In Klaudt v. City of Menno, 72 S.D. 1, 28 N.W.2d 876, a petition for a special election admittedly signed by the requisite number of legal voters, was held faulty by reason of not stating the post office addresses of the signers nor the date of signing. To permit additional signatures to be added here, after the board has apparently acted thereon would lead to confusion. Was this one set of petitions and one proceeding with two resolutions of the Board thereon? As the second resolution did not set aside the first, was an aggrieved party required to appeal from both? Or were these two sets of petitions and two separate proceedings? Appellant Dean evidenced his uncertainty by appealing from both. This was not a petition, as in the Menno case, to call an election where the electors generally could decide the issue and even the petitioners change their minds; it was a petition in lieu of an election, a request that gave jurisdiction to a board to make an important decision that would affect the educational and financial interests and personal lives of the patrons of all the school districts involved. The requirements should not be read so as to leave those interested uncertain or confused as to whether there was compliance nor be less than those required to call an election. The amended subsection under which these proceedings were initiated had a short life; it was again amended by the 1959 Legislature. Ch. 60, Session Laws of 1959.

■ ■ For quasi judicial petitions such as are here involved, State ex rel. Williams v. Bateman, 60 S.D. 320, 244 N.W. 357, we believe that this uncertainty will be avoided and a more orderly procedure result from the conclusion that neither supplemental petitions may be filed nor the

additional signatures considered after the board has once acted upon the petitions.

■ Respondents argue that the initiation of the reorganization may be made by either the County Board or the electors; that a resolution may be first passed by the Board and the next step is approval by the electors signing the "petition for reorganization". In its ordinary sense a petition is a written request to a board for action on some matter therein laid before it. Webster's New International Dictionary. As directed by SDC 65.0202(7) it is understood to be so used here. We believe the legislature intended the petition for reorganization be first signed, then filed with and certified to by the auditor and presented to the board for action. It is unnecessary to consider the other assignments of error in either the injunction action or the Dean appeal. The judgments appealed from are reversed.

All the Judges concur.