16   273
39   142
e39  143

[No. 2201.   Decided December 24, 1896.]

## J. W. HEFFNER, *Respondent*, v. THE BOARD OF COUNTY COMMISSIONERS OF SNOHOMISH COUNTY *et al.*, *Appellants*.

RECORD ON APPEAL—AFFIDAVITS—REMOVAL OF COUNTY SEAT—DUTY OF COUNTY COMMISSIONERS—CANVASS AND DECLARATION OF VOTE.

Affidavits introduced in evidence at the hearing of a cause in the court below should be brought into the record on appeal by inclusion in a statement of facts.

The failure of county commissioners to canvass the election returns upon a vote for the removal of a county seat, until more than ninety days after the election thereon, contrary to the provisions of Gen. Stat., § 2463, requiring them to ascertain and declare the result "not more than ninety days after the election," will not preclude the discharge of the duty imposed on them in that respect after the expiration of the time prescribed by statute, since the statutory direction is not mandatory in its terms.

Under Gen. Stat., § 2462, making it the duty of the county commissioners, when an election for the removal of a county seat has been held, to receive and compare the returns and ascertain the results, and declare the place selected, if three-fifths of the legal votes cast on the proposition are in favor of any particular place, the commissioners are warranted in going behind the returns and examining the ballots cast, for the purpose of determining the result, and their action in that regard, when compliance has been had with statutory requirements, is not subject to review by the courts.

Appeal from Superior Court, Snohomish County.— Hon. JOHN C. DENNEY, Judge.   Reversed.

*Crowley, Sullivan & Grosscup*, and *Francis H. Brownell*, for appellants.

*S. H. Piles*, and *Sapp & Lysons*, for respondent.

The opinion of the court was delivered by

ANDERS, J.—The respondent moves the court to strike the statement of facts from the record herein

on the ground that the statement is not permissible under the law, for the alleged reason that it is composed of affidavits which were introduced in evidence at the hearing in the court below, and filed with the clerk. The contention of the respondent is that the affidavits should have been included in the transcript certified by the clerk as part of the files, as provided in § 14 of the act of March 8, 1893, relating to appeals. Laws 1893, p. 126. As matter of fact, however, the affidavits are embraced in the transcript as well as in the statement of facts, and, if the statement were stricken, they would still be a part of the record. But this court recently decided, in *Clay v. Selah Valley Irrigation Co.*, 14 Wash. 543 (45 Pac. 141), that affidavits should be brought into the record by a statement of facts. See, also, *Windt v. Banniza*, 2 Wash. 147 (26 Pac. 189).

The motion will therefore be denied.

This is an appeal from an order of the superior court of Snohomish county granting a preliminary injunction restraining the defendants, who are county officers, from removing their respective offices from the city of Snohomish to the city of Everett. The facts necessary to an understanding of the case are as follows:

At a general election held on November 6, 1894, there was submitted to the voters of Snohomish county the question of the removal of the county seat from the city of Snohomish to the city of Everett. The returns of the election were duly transmitted from the various precincts of the county to the county auditor, and, after a pretended canvass thereof, a majority of the board of commissioners, on December 18, 1894, entered an order declaring that more than three-fifths of the legal votes cast on the proposition were in favor

of removing to Everett, and posted the notices required by law, declaring the city of Everett to be the county seat from and after the date named therein. Prior to the time fixed for the removal, one John Krieschel, one of the county commissioners of said county, instituted an action against all the county officers to enjoin them from removing their respective offices, records, fixtures and furniture from Snohomish. An order granting a temporary injunction was entered, and the defendants appealed; and it appearing to this court that the orders made by the county commissioners were void, because they had never received and compared the returns of the election and ascertained the result, as prescribed by the statute, the order of the superior court was affirmed. See *Krieschel v. County Commissioners*, 12 Wash. 428 (41 Pac. 186). Subsequently to the decision, and on October 2, 1895, the commissioners assembled at their usual place of meeting and, having received the returns of the election, proceeded to examine, compare and canvass the same and to ascertain the result, and, on the following day, made an order declaring that more than three-fifths of the legal votes cast at said election in said county were in favor of removing the county seat to the city of Everett, and prepared and entered of record the notice prescribed by statute, declaring the said city of Everett to be the county seat of Snohomish county from and after November 5, 1895. Thereupon the plaintiff, who was prosecuting attorney of the county, brought this action to restrain the several county officers from removing their respective offices and property pertaining thereto in accordance with said order. A temporary injunction was granted, and the defendants have brought the cause here for review.

Many points are made and discussed in the able and

elaborate briefs of counsel for the respective parties, but we do not deem it necessary to determine or consider them all, in order to properly dispose of the case. The statute providing for the removal of county seats provides that, "when the returns have been received "and compared, and the results ascertained by the "board, if three-fifths of the legal votes cast by those "voting on the proposition are in favor of any par- "ticular place, the board must give notice of the re- "sult by posting notices thereof in all of the election "precincts of the county. In the notice provided for "in the next preceding section of this chapter, the "place selected to be the county seat of the county must "be so declared from a day specified in the notice not "more than ninety days after the election. After the "day named in the notice the place chosen is the seat "of the county; and it shall be the duty of the several "county officers, whose offices are required by law to "be kept at the county seat, to remove their respec- "tive offices, files, records, office fixtures, furniture "and all public property pertaining to their respective "offices to said county seat." 1 Hill's Ann. Stat., § 2462, 2463. And it is contended that the board of commissioners had no power, under the law, to canvass the votes or declare the place appearing to be selected to be the county seat at a date more than ninety days after the election. But it must be conceded that it was the duty of the commissioners to compare the returns and ascertain the result of the election. This they did not do at their first meeting, as this court found in the *Krieschel case*. Not having performed that duty within the time specified in the statute, if they could not afterwards perform it, the effect would be to disfranchise the voters of the county, and to annul the election. We think that the commissioners

might have been compelled by mandamus to meet and canvass the returns notwithstanding their former pretended canvass, unless it be true, as claimed, that they had no power to do so after the time mentioned in the statute.

Judge COOLEY, in speaking of the duties of canvassing boards, says:

" If canvassers refuse or neglect to perform their duty, they may be compelled by *mandamus*; though as these boards are created for a single purpose only, and are dissolved by an adjournment without day, it has been held that after such adjournment, *mandamus* would be inapplicable, inasmuch as there is no longer any board that can act. But we should think a better doctrine to be, that if the board adjourn before a legal and complete performance of their duty, *mandamus* would lie to compel them to meet and perform it. But when the board themselves have once performed and fully completed their duty, they have no power afterwards to reconsider their determination and come to a different conclusion." Cooley, Const. Lim. (5th ed.) p. 784.

We think the language just quoted expresses the correct doctrine and is fully applicable to the facts of this case.

See, also, *Lewis v. Commissioners*, 16 Kan. 102; *Smith v. Lawrence*, 2 S. D. 185 (49 N. W. 7.)

And see, also, *Ex parte Heath*, 3 Hill, 42; *People v. Schiellein*, 95 N. Y. 124.

And we are of the opinion that, what the board might have been compelled to do by mandamus, they could do voluntarily, for the office of the writ is simply to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station, where there is no plain, speedy and adequate remedy in the ordinary course of law. Laws 1895, p. 117.

Nor do we think the board was precluded from canvassing the returns and declaring the result of the election by the mere lapse of time. In our judgment the direction in the statute as to time is not mandatory. It is not of the essence of the thing to be done by the commissioners. There are no words showing that it was the intention of the legislature that the canvass should be made, the result declared, and the notices given within ninety days after the election, or no at all. No penalty is provided for non-performance, and the canvass, when completed, accomplished the purpose contemplated by the statute, because it determined the result of the election. And we are, therefore, of the opinion that it was equally as efficacious as if it had been made within the time directed by the legislature.

It appears that the commissioners in canvassing the returns rejected certain votes cast at Port Gardner in favor of removal, and also two hundred votes returned from South Snohomish against removal and the rejection of these last mentioned votes constitutes the real ground of complaint in this action. It appears from the poll books and tally lists that two hundred and forty-two votes were cast against the proposition to remove the county seat at the precinct of South Snohomish. The commissioners, however, counted only forty-two of these votes for the alleged reason, it seems, that the remainder appeared to be spurious, illegal and fraudulent. It is claimed by appellants that the commissioners were justified in rejecting these votes for the reason that it appears on the tally lists that the ink was changed in making the tally marks after forty-two votes were registered; that erasures and changes were made in the figures showing the total number of votes cast, and also in the

written statement of the total number of votes on the last page of the poll book; and that the highest number of votes cast at the election, in the precinct, for any county or state officer was forty-seven only. On the contrary, it is contended by the learned counsel for the respondent that the commissioners had no right or power to reject votes appearing on the returns for the reasons alleged, or for any other reason; but that they were bound to count all votes appearing on the face of the returns.

It is almost uniformly held by the courts in this country that the duty of canvassing boards generally is ministerial simply, and consists in ascertaining the number of votes polled and declaring the result as shown by the face of the returns; and such was declared to be the rule of law in this state in *State, ex rel. King v. Trimbell*, 12 Wash. 440 (41 Pac. 183). And the reason for this rule is found in the fact that the statutes generally provide methods for contesting elections, and trying the title to office, before some judicial tribunal having power to examine witnesses, receive evidence and determine the real facts irrespective of what may appear on the face of the returns. But where the legislature have devolved upon a particular tribunal or board the duty of ascertaining, declaring and publishing the result of an election to determine a special question, such as the removal of a county seat, it would seem to have been their intention that such tribunal, and no other, should finally determine such result, and they cannot discharge their duty without exercising their judgment as to the matters to be determined. All the courts of general jurisdiction can do, in cases of this character, is to ascertain whether the tribunal or board has proceeded according to the directions of the statute defining their

duties, and to declare their proceedings ineffectual and void if they have departed from such directions. In the *Krieschel case* this court held that the county commissioners could not arbitrarily, and contrary to the constitution and the law, determine the result of the election, but must ascertain the result from an examination, or, using the statutory term, a comparison of the returns, because such is the mandate of the law by which they were governed.

But in this case it appears that the board, or at least a majority of its members, received and "compared" the returns and ascertained the number of legal votes cast on the proposition and declare the result, and if they arrived at a wrong conclusion we know of no legal method whereby their act, in that regard, can be reviewed by the courts. *Parmeter v. Bourne*, 8 Wash. 45 (35 Pac. 586, 757).

In *Rickey v. Williams*, 8 Wash. 479 (36 Pac. 480), we enjoined the removal of the county seat because it appeared that the county commissioners acted upon an insufficient petition, and therefore without jurisdiction, in submitting the question to a popular vote; and in the *Krieschel case* we did the same thing, for the reasons hereinbefore indicated. In *People, ex rel. Pack, v. Supervisors*, 36 Mich. 377, the court held that a proceeding to remove a county seat which failed to designate, as required by law, the place to which the proposed removal was to be made was invalid. But the same court has repeatedly ruled, under a statute providing that the supervisors, for the purpose of ascertaining the vote of the county, shall examine the statements and certificates of the election officers and canvass the vote thereon and declare the result of the vote in the county (1 Howell's Ann. Stat., § 491) that the decision of the supervisors in canvassing and

determining the vote is conclusive. And in a recent case, that court held that it could not interfere with the action of the supervisors in rejecting the vote of a township on the grounds of fraud, for the reason that the legislature had not provided a method for reviewing such action; and we are in the same situation here and must be guided by like considerations. *Pinkerton v. Staninger*, 101 Mich. 273 (59 N. W. 611).

It appearing that the commissioners have " received and compared " the returns, and have found, and properly certified to, the facts which the statute expressly submitted to them for determination, we feel constrained to accept their decision as conclusive upon the courts.

The order appealed from must be reversed and the cause remanded to the court below with directions to dismiss the action.

GORDON and DUNBAR, JJ., concur.

HOYT, C. J., dissents.