[No. 17683.  *En Banc.*  December 19, 1922.]

THE STATE OF WASHINGTON, *on the Relation of Albert Maurer et al., as the Board of County Commissioners of Cowlitz County, Plaintiff,* v. THE SUPERIOR COURT FOR COWLITZ COUNTY, *Defendant.*[1]

COUNTIES (7, 8)—REMOVAL OF COUNTY SEAT—CANVASS OF ELECTION RETURNS—POWER OF COUNTY BOARD—REVIEW.  Under Rem. Comp. Stat., § 4002, the county commissioners have exclusive authority to canvass the returns of an election for the removal of the county seat, and the superior court is without jurisdiction to control or hear the matter.

PROHIBITION (20)—TO COURTS—WANT OF JURISDICTION—REMEDY BY APPEAL.  There being lack of inherent jurisdiction in the superior court to canvass the votes of an election for the removal of a county seat, prohibition lies to restrain the proceedings, notwithstanding there is a remedy by appeal from an order made restraining the county commissioners from making their canvass.

TOLMAN, J., dissents.

Application filed in the supreme court November 13, 1922, for a writ of prohibition to prevent the superior court for Cowlitz county, Kirby, J., from restraining the county commissioners from canvassing the returns of an election for the removal of a county seat. Granted.

*Fisk & McCarthy, Wm. Stuart,* and *Chas. D. McCarthy,* for relator.

*A. H. Imus* and *Chester A. Sheppard,* for respondent.

PEMBERTON, J.—On November 7, 1922, at the general election held in Cowlitz county, the question of the removal of the county seat from the town of Kalama to the city of Kelso was voted upon by the electors of the county.

[1]Reported in 211 Pac. 764.

On the 10th day of November, one I. N. Beighle filed a complaint in the superior court of the county wherein he alleged that a large number of persons voted at the election who were disqualified for the failure of having registered as provided by law, and that the registration officers in the city of Kelso were guilty of fraudulent and unlawful conduct; that, on account of the irregularities, misconduct and fraud practiced by the people of the city of Kelso on and prior to the 7th day of November, 2,530 votes were cast in favor of removal of the county seat from the town of Kalama to the city of Kelso, and that 1,574 votes so cast should not be counted as legal votes in favor of the removal of the county seat from the town of Kalama to the city of Kelso; that, if the illegal and fraudulent votes had not been cast, there would not have been sixty per cent of the votes cast on the subject of removal of the county seat in favor of the removal. It is also alleged in the complaint "that Albert Maurer, P. A. Parker and J. C. Ferguson, as a board of county commissioners, are about to sit as a canvassing board to canvass the returns of the election had as aforesaid and will, unless restrained by this court, count the illegal and fraudulent votes in favor of the removal of the county seat and declare the proposition of said county seat removal carried, and make an order establishing Kelso the legal county seat of Cowlitz county, Washington, and that said board of county commissioners, sitting as a board of canvassers as above mentioned, is about to act, and an emergency exists which requires the issuance of an emergency temporary restraining order without notice to the defendants."

Upon the filing of the complaint, Homer Kirby, judge of the superior court of the county, issued a

restraining order wherein Albert Maurer, P. C. Parker and J. C. Ferguson, as a board of county commissioners and as a canvassing board, were restrained and enjoined from counting the votes cast in certain precincts, including the precinct of the city of Kelso, in favor of the removal, and the board of county commissioners was also restrained and enjoined from making any order relating to the removal of the county seat until after hearing and until further order of the court.

The county commissioners have made application to this court for a writ of prohibition. The alternative writ was issued and the cause is now here for final determination.

There are two questions involved in this proceeding: First: Has the superior court, under the constitution and laws of this state, jurisdiction to restrain the board of county commissioners from canvassing the votes cast upon the question of the removal of a county seat? Second: If the superior court is without jurisdiction, should a writ of prohibition issue?

The question of the jurisdiction of the court to interfere with the action of the board of county commissioners in canvassing the returns or reviewing their determination in a county seat removal election has been before this court a number of times. In the case of *Mann v. Wright*, 81 Wash. 358, 142 Pac. 697, this court reviewed these decisions as follows:

"This court has had occasion to review at length all the questions presented by the record. *Parmeter v. Bourne*, 8 Wash. 45, 35 Pac. 586, 757; *Rickey v. Williams*, 8 Wash. 479, 36 Pac. 480; *Krieschel v. Board of Com'rs, Snohomish County*, 12 Wash. 428, 41 Pac. 186; *Heffner v. Board of County Com'rs, Snohomish County*, 16 Wash. 273, 47 Pac. 430    . . . .

"It will appear from a reference to these cases that we have held the submission of a proposition to change a county seat to be a political or a public question; that, in the absence of a statute giving the courts juris-diction of such matters, the courts will not interfere with the determination of the board of county commissioners where the order of submission is fair upon its face, except in cases of fraud or arbitrary action such as was present in the *Rickey* and *Krieschel* cases."

In the *Rickey* case, the court held that the petition for such election showed upon its face that it did not have the number of signatures required by statute, and the election held in pursuance thereof was necessarily invalid, and that injunction was the proper remedy. The court, however, stated:

"The granting of the writ in this case did not involve an inquiry into any matter which rested in the discretion of the board, nor into any disputed question of fact."

In the *Krieschel* case, the county commissioners failed to canvass the returns and did not ascertain the number of legal votes cast, and it was held that,

"The result of the election not having been ascertained, the pretended canvass and ascertainment by the board was not merely irregular, but absolutely void, and constituted no foundation or authority whatever for the order and declaration entered upon the records."

Thereafter the county commissioners canvassed the returns and declared the result of the election. In reaching this result the board rejected certain votes appearing on the return, holding that they were illegal and fraudulent. Thereupon the prosecuting attorney of the county brought an action to restrain the county officers from removing their respective offices in accordance with the order changing the county seat. A temporary injunction was granted and was reviewed

by this court in the case of *Heffner v. Board of County Commissioners*, 16 Wash. 273, 47 Pac. 430. Upon the question of the county commissioners refusing to count votes that appeared to them illegal and fraudulent, the court said:

"But where the legislature have devolved upon a particular tribunal or board the duty of ascertaining, declaring and publishing the result of an election to determine a special question, such as the removal of a county seat, it would seem to have been their intention that such tribunal, and no other, should finally determine such result, and they cannot discharge their duty without exercising their judgment as to the matters to be determined. All the courts of general jurisdiction can do, in cases of this character, is to ascertain whether the tribunal or board has proceeded according to the directions of the statute defining their duties, and to declare their proceedings ineffectual and void if they have departed from such directions . . . But in this case it appears that the board, or at least a majority of its members, received and 'compared' the returns and ascertained the number of legal votes cast on the proposition and declared the result, and if they arrived at a wrong conclusion we know of no legal method whereby their act, in that regard, can be reviewed by the courts."

It is not charged that the county commissioners themselves are guilty of fraudulent conduct. Rem. Comp. Stat., § 4002, provides:

"When the returns have been received and compared, and the results ascertained by the board, if three-fifths of the legal votes cast by those voting on the proposition are in favor of any particular place, the board must give notice of the result by posting notices thereof in all the election precincts in the county."

The county commissioners have exclusive authority to canvass the returns of the election, and in so doing to go behind the returns and investigate the ballots

cast, for the purpose of ascertaining "the number of legal votes cast by those voting on the proposition" in order to determine the result of the election, and the court is clearly without jurisdiction to control their action or review the result of their determination so long as they proceed according to the directions of the statute.

It is contended, however, that, if the superior court of Cowlitz county is without jurisdiction, there is a plain, speedy and adequate remedy by appeal, and for that reason the writ should not issue, and that the want of jurisdiction must first be called to the attention of the trial court, relying on the case of *State ex rel. Miller v. Superior Court*, 40 Wash. 555, 82 Pac. 875, and authorities cited therein.

The court reviewed all of these authorities in the case of *State ex rel. Martin v. Superior Court*, 101 Wash. 81, 172 Pac. 257, 4 A. L. R. 572, and concerning the apparent conflict of authority upon this question said:

"But if, after all, it be said with any assurance that we have held to the contrary of our present position, it can be said with the same assurance that we have as often held the other way.

"We have not always differentiated between inherent power to hear and power to proceed. This has resulted in a confusion in our decisions. With this distinction preserved, the law is clear. Where there is a lack of inherent jurisdiction in the court itself, a writ of prohibition will lie to restrain it from further proceedings; . . . Where, however, the question is whether the court, acting within the scope of its admitted jurisdiction, has acquired jurisdiction over the parties or the particular subject-matter, the writ will not issue."

The writ will issue.

PARKER, C. J., and FULLERTON, J., concur.

Holcomb, J. (concurring)—The decision in *Heffner v. Board of County Commissioners,* 16 Wash. 273, 47 Pac. 430, was wrong and went much further than the tenor or intendment of the statute, § 4002, Rem. Comp. Stat.

That decision extended the statute so that boards of county commissioners have power and authority in county seat elections to go behind the returns, open the ballot boxes, "determine what ballots and votes were legal," and what not legal; and, in fact, determine anything that courts of general jurisdiction could determine, and, according to the decision, their authority is exclusive.

That decision seems to have become established as the law, and the majority of the court are averse to overruling the former decisions of the court upon that question.

In the hope that the legislature, at least, will awake to the evil state of the law and remedy it, so as to provide for appeals from decisions of boards of county commissioners in such cases, I, perforce, concur in the result.

Mackintosh and Bridges, JJ., concur with Holcomb, J.

Mitchell and Main, JJ., concur in the result.

Tolman, J., dissents.