Honorable Andrew K. Miller Benton County Prosecuting Attorney 7122 West Okanogan Place, Bldg. A Kennewick, WA 98273
Dear Prosecutor Miller:
By letter previously acknowledged, you have requested an opinion on the following questions, which we have paraphrased slightly for clarity:
With regard to petitions for the removal of a county seat submittedpursuant to RCW 36.12.010:
 1. May the board of county commissioners request that the countyauditor determine whether submitted petitions contain the requisitenumber of valid signatures?
 2. Is the person submitting the petitions entitled to observe thecanvassing of the signatures?
 3. Is there any limit to how old a signature reflected on a petitionmay be and still be valid?
 4. After a petition has been submitted under RCW 36.12.010, cansignatures be withdrawn, or additional signatures or additionalpetitions be submitted, prior to the completion of the canvassing of thesignatures?
 5. If petitions are submitted immediately prior to a general election(e.g., prior to the November 2008 general election) and the signaturescannot be canvassed prior to such general election, should the number ofvotes cast in the last general election before the petitions are filed(e.g., the November 2006 general election), or should the number ofvotes cast in the last general election before the signatures arecanvassed (e.g., the November 2008 general election), be used todetermine the number of signatures required under RCW 36.12.020?
 6. If it is determined that an insufficient number of valid signatureshave been submitted, must the county retain the original petitions orreturn them to the person that submitted them?
 7. If it is determined that a sufficient number of valid signatureshave been submitted and an election is held, does RCW 36.12.050 requirethat the board of county commissioners canvass the election, or can theboard of county commissioners request that the canvassing board,comprised of the persons set forth under RCW 29A.60.140, canvass theelection?
 BRIEF ANSWERS
1. Under the provisions of RCW 36.12, the board of county commissioners has an obligation to canvass any petition proposing to remove the county seat. To the extent that the canvassing functions performed require the exercise of discretion — determining the validity of [Original Page 3] petition signatures for example — those functions may not be delegated to another body or officer. However, purely administrative or ministerial functions — for example, compiling a report to the commission on the number of signatures or identifying potential issues with the validity of certain petition signatures that the board must resolve — may be delegated.
2. Neither the provisions of RCW 36.12 nor the general state election laws address whether anyone is entitled to observe the canvassing of petitions to remove a county seat. However, when a board of county commissioners convenes a meeting to undertake some action, including the canvassing of signatures, the Open Public Meetings Act applies.
3. State statutes do not require that a removal petition be filed with the county within any particular time after signatures are affixed.
4. The filing deadline set forth in RCW 36.12.020 establishes the time limit for filing any petition(s) in support of a removal proposal. Signatures on a removal petition may be withdrawn, and a prior withdrawal of a signature may be revoked, within the same time limit.
5. The sufficiency of a timely-filed petition to remove the county seat is evaluated based upon the votes cast in the last county general election preceding the filing deadline for the petition.
6. Petitions for the removal of a county seat that are filed with a county are public records and must be retained in accordance with the provisions of RCW 40.14. Furthermore, once a timely removal petition is filed and its sufficiency determination is made, the process contemplated by RCW 36.12.010 is complete. Sufficient petitions must be referred to an election. Insufficient petitions are not voted upon. In either case, the process is complete and the filed petitions may not be used again to support another removal proposal.
7. The answer to this question is similar to the answer provided in response to your first question. A board of county commissioners has special duties assigned by law with respect to elections regarding the removal of county seats, including the canvassing of election returns. Only those canvassing functions that are ministerial or administrative in nature may be delegated by a board of county commissioners.
 ANALYSIS
We begin this opinion with a brief summary of the constitutional and statutory provisions relating to the removal of county seats.
Article XI, section 2 of the Washington Constitution addresses the location and removal of county seats. It provides that "[n]o county seat shall be removed unless three-fifths of the qualified electors of the county, voting on the proposition at a general election shall vote in favor of such removal". Furthermore, no proposition for the removal of a county seat may be submitted within a county more than once every four years. Const. art. XI, § 2.
[Original Page 4] In RCW 36.12, the legislature established procedures for submitting and processing any proposition seeking to remove and relocate a county seat.[1] The inhabitants of any county seeking to remove the county seat to a new location may submit a petition to the board of county commissioners. RCW 36.12.010.[2] The petition must identify the name of the town or city that is being proposed as an alternate location for the county seat. RCW 36.12.010. The petition is a request for an election on that question, and the statute requires the petition to be filed at least six months before the election. RCW 36.12.010. At least sixty days before any election on that issue, the county must issue a statement analyzing the financial impact of the proposed removal. RCW 36.12.010.
If the petition for removal is signed by qualified voters of the county in a number equal to at least one-third of the votes cast in the county at "the last preceding general election", the board of county commissioners is required to submit the question of removal to be voted upon at the "next general election of county officers". RCW 36.12.020. The election must be held and conducted, and the returns made, in the same manner as the election being held for county officers. RCW 36.12.030. Consistent with the provisions of article XI, section 2 of the Washington Constitution, if three-fifths of the votes cast with respect to any identified location are in favor of the proposition, then the proposed removal is approved. RCW 36.12.050. If no proposed location receives the requisite number of votes, the county seat remains in the same location. RCW 36.12.080. Furthermore, this statute provides an additional limitation on repeat elections. Regardless of whether the proposed removal is approved or defeated, no second election may be held within eight years thereafter. RCW 36.12.080, .090.
Your request poses several procedural questions regarding the legal framework for the removal of county seats.
1. May the board of county commissioners request that the countyauditor determine whether submitted petitions contain the requisitenumber of valid signatures?
Your question assumes that a board of county commissioners has the duty to canvass the signatures on a removal petition submitted pursuant to RCW 36.12. Because the issue of whether canvassing duties may be delegated depends upon both the existence of an assigned duty[Original Page 5] to canvass and the nature of the canvassing function performed, we begin by examining the question of whether county commissioners are assigned this duty.
RCW 36.12 does not explicitly address the means for ascertaining whether a petition for removal of a county seat contains the requisite number of valid signatures. RCW 36.12.020 simply provides that a board of county commissioners is required to submit the question of removal "[i]f the petition is signed by qualified voters of the county equal in number to at least one-third of all the votes cast in the county at the last preceding general election".
By contrast, RCW 36.12.050 appears to invest boards of county commissioners with specific duties in relation to the results of any election on the removal of a county seat. These boards are charged with the duty to receive and compare the election returns, ascertain the results of the election, and provide notice to all the county election precincts if the vote is sufficient to remove the county seat.[3]
A series of early cases explored the obligations and powers of boards of county commissioners in relation to the laws now found in RCW 36.12. Most of the cases discuss the canvassing of voting returns when an election is called regarding the removal of a county seat, [4] but several cases suggest that any analysis of that function applies with equal force to the canvassing of signatures on petitions submitted pursuant to RCW 36.12.020. In Lawry v. Board of Commissioners ofSnohomish County, 12 Wash. 446, 41 P. 190 (1895), the Court spoke to the breadth of the entire removal statute and concluded that
 duties are cast upon the board of county commissioners which are separate and distinct from their ordinary and usual duties. In discharging them, it acts as the representative or agent of the legislature, by virtue of a special statute enacted for the sole purpose of clothing it with special powers, and which provides for no appeal.
Lawry, 12 Wash. at 448.
The structure of RCW 36.12 also suggests that the board of county commissioners is assigned the duty of canvassing a removal petition. The obligation of a board of county commissioners to refer a petition for removal of a county seat to an election requires an initial determination that the requisite number of petition signatures has been obtained. See also Hindman v. Boyd, 42 Wash. 17, 33, 84 P. 609 (1906) (holding that where a statue is [Original Page 6] silent regarding the duty to canvass a petition, that task falls to the entity to whom the petition is presented).
Considering the overall structure of RCW 36.12, and the conclusion inLawry that these statutory provisions direct boards of county commissioners to perform specific duties in relation to proposals to remove a county seat, we conclude that RCW 36.12.020 imposes a duty on a board of county commissioners to canvass the validity of signatures on petitions to remove a county seat. See also Rickey v. Williams,8 Wash. 479, 485, 36 P. 480 (1894) (suggesting, without explicitly deciding, that the county commissioners are vested with the task of verifying that a removal petition carries sufficient signatures).
Having confirmed that the boards of county commissioners are vested with the duty to canvass a removal petition, we next consider whether that duty may be delegated to the county auditor.
In general, when a state statute imposes a duty on a local official, that duty may not be delegated to another local official unless such delegation is specifically authorized. Mun. of Metro. Seattle v.Division 587, Amalgamated Transit Union, 118 Wn.2d 639, 643,826 P.2d 167 (1992);Roehl v. Pub. Util. Dist. 1 of Chelan Cy., 43 Wn.2d 214,240, 261 P.2d 92 (1953). However, this nondelegation principle generally does not preclude a local official from delegating administrative or ministerial aspects of the official's duty in contrast to those duties requiring the exercise of discretion. Roehl; Storey v. City of Seattle,124 Wash. 598, 604, 215 P. 514 (1923); Whatcom Cy. v. Taxpayers ofWhatcom Cy. Solid Waste Disposal Dist., 66 Wn. App. 284, 293,831 P.2d 1140 (1992). Accordingly, your question requires an examination of the nature of the petition canvassing duties that are performed under the applicable statutes.
RCW 36.12 requires boards of county commissioners to undertake various canvassing functions. They are required to ascertain whether any removal petition contains a sufficient number of valid signatures. See RCW 36.12.020. Where a removal petition is found to contain the requisite number of signatures, the board must refer the issue for an election. RCW 36.12.020. The board is then obliged to receive the election returns and determine if a sufficient number of legal votes have been cast in favor of the proposition (RCW 36.12.050) and to declare and provide notice of any decision to remove the county seat. RCW 36.12.060, .070.
Canvassing functions performed by local canvassing boards are generally identified as nothing more than a ministerial duty. See, e.g.,State ex rel. Carpenter v. Superior Ct. for King Cy., 118 Wash. 664,204 P. 797 (1922) (canvassing of votes is typically ministerial, consisting of counting and tabulating votes, unless a statute grants more explicit powers); State ex rel. King v. Trimbell, 12 Wash. 440, 41 P. 183 (1895). However, where the canvassing function is characterized as ministerial, the activity is typically limited to the counting of votes on returns where local officials have already determined whether the ballots cast are valid. In those cases, the canvassing function is limited, with no power to "go behind the returns" and reject ballots or signatures.
[Original Page 7] In contrast, the canvassing functions performed under RCW 36.12 require a local board of county commissioners to assess the validity of ballots or signatures. When that type of canvassing function occurs, the activity is more than ministerial, because a board of county commissioners is then empowered to "go behind the returns" and assess the validity of ballots or signatures. See State ex rel. Maurerv. Superior Ct. for Cowlitz Cy., 122 Wash. 555, 559-60, 211 P. 764
(1922) (concluding that county commissioners have "exclusive authority to canvass the returns of [a removal] election, and in so doing to go behind the returns and investigate the ballots cast, for the purpose of ascertaining the number of legal votes cast" (internal quotation mark omitted)). See also Vangor v. Munro, 115 Wn.2d 536, 543, 798 P.2d 1151
(1990) (holding that comparing and certifying genuine signatures on an initiative petition "are acts of authorized discretion" (internal quotation marks omitted)); State ex rel. Harris v. Hinkle,130 Wash. 419,429, 227 P. 861 (1924). Because these duties involve the exercise of discretion, they may not be delegated.
This lack of authority to delegate discretionary canvassing functions is mirrored in state election statutes such as RCW 29A.60.140. This statute provides that county canvassing boards may delegate certain canvassing functions to the county auditor, but may not delegate the duty to certify an election or to determine the validity of challenged ballots. See also RCW 29A.60.050 (assigning county canvassing boards the duty of ascertaining the validity of ballots).[5]
Based upon these authorities, we conclude that a local board of county commissioners may not delegate any portion of its duties under RCW 36.12
that requires the exercise of discretion. This includes the duty to ascertain whether a signature on a removal petition is valid. However, a board of county commissioners may enlist the aid of the county auditor in performing those portions of the canvassing function that are ministerial or administrative in nature — those functions that do not require the exercise of some discretion. For instance, once the board of county commissioners has determined which signatures are valid, others might perform the function of counting the valid signatures, calculating the number of valid signatures required, and preparing reports concerning the results of the canvassing process.
2. Is the person submitting the petitions entitled to observe thecanvassing of the signatures?
The Open Public Meetings Act (OPMA), RCW 42.30, applies where a public agency that is governed by a multi-member board or commission convenes to transact official business. See RCW 42.30.020. Where the OPMA applies, the business meetings of a public agency are open[Original Page 8] to the public. This includes any official determination made by a board of county commissioners pursuant to RCW 36.12. See, e.g., Loeffelholz v. C.L.E.A.N., 119 Wn. App. 665, 700-04,82 P.3d 1199, review denied, 152 Wn.2d 1023, 101 P.3d 107 (2004).
While the OPMA does not require open meetings when election canvassing activities are performed by an entity that is not governed by a multi-member board (e.g., the county auditor's office), or where ministerial canvassing functions are delegated to staff by an entity subject to the OPMA (Loeffelholz, 119 Wn. App. at 703-04), there are separate state statutes requiring some canvassing functions to be conducted in an open manner. For example, RCW 29A.60.170 provides that the proceedings of an election counting center "must be open to the public, but no persons except those employed and authorized by the county auditor may touch any ballot or ballot container or operate a vote tallying system." RCW 29A.60.170(1). As a general election law, this provision would apply to the canvassing of votes cast in an election on the question of removing a county seat. See RCW 36.12.030. However, RCW 29A.60.170 does not address the canvassing of petition signatures.
RCW 29A.72.230 addresses the ability to observe the canvassing and verification of statewide initiative or referendum petitions by the secretary of state. It states that the
 verification and canvass of signatures on the petition may be observed by persons representing the advocates and opponents of the proposed measure so long as they make no record of the names, addresses, or other information on the petitions or related records during the verification process except upon the order of the superior court of Thurston county.[6]
RCW 29A.72.230. However, this statutory provision applies only to statewide referenda and initiatives and is not applicable to elections for county officers, so its provisions are not incorporated into the canvassing of removal petitions. See RCW 36.12.030.
Accordingly, we observe that there is no direct statutory or regulatory requirement regarding the ability to observe the canvassing of valid signatures on removal petitions. To the extent that canvassing functions are performed by a public agency governed by a multi-member board or commission that has convened to transact business, the OPMA applies. To the extent that ministerial or administrative canvassing functions are delegated to entities that are not subject to the OPMA, a board of county commissioners may decide to open those proceedings to the public and may find that the provisions of RCW 29A.72.230 provide helpful guidelines.
3. Is there any limit to how old a signature reflected on a petitionmay be and still be valid?
 [Original Page 9] RCW 36.12.020 sets forth the requirements for determining whether a removal petition has enough signatures to trigger an election on the issue proposed. A petition must be "signed by qualified voters of the county equal in number to at least one-third of all the votes cast in the county at the last preceding general election". RCW 36.12.020. RCW 36.12.010 also provides that any removal petition must be filed at least six months before the election to which the removal question may be referred. No other provisions of RCW 36.12
address any requirements or limitations with regard to the sufficiency of a removal petition. Accordingly, while RCW 36.12.010 precludes the filing of any removal petition less than six months prior to an election on the removal question, and thus has the practical effect of precluding the addition of any petition signatures within that time frame, there are no provisions within RCW 36.12 that disqualify a petition signature on the basis that it is too old.
RCW 36.12.030 specifies that an election on a removal question "must be held and conducted, and the returns made, in all respects in the manner prescribed by law in regard to elections for county officers." While this provision incorporates general election laws applicable to county officers, it does so only for the purposes of conducting an election on a removal question that has been referred to voters. The statute does not expressly incorporate general state election laws for purposes of canvassing removal petitions. Accordingly, general election laws do not provide any limitation on the time that might elapse between the affixing of a signature on a petition and the submittal of the petition to the board of county commissioners.
Moreover, there are no general state election laws regarding petition signatures that might apply to petitions to remove a county seat. RCW 35.21.005(8) and RCW 35A.01.040(8) are the only Washington statutes that expressly provide a limit — six months — on the time between the date that a petition is signed and the filing of the petition. However, those limits apply solely to petitions required to be signed under the provisions of RCW Titles 35 and 35A. They do not apply to removal petitions signed pursuant to the provisions of RCW 36.12. The statutory provisions relating to initiatives and referenda do not contain an express limitation on the age of petition signatures, but do set forth certain time frames for filing such proposals with the secretary of state and for the subsequent filing of signature petitions seeking to qualify those proposals. This has the practical effect of establishing a limited window in which petition signatures may be gathered. However, these statutory provisions apply only to statewide initiatives and referenda. See Paxton v. City of Bellingham, 129 Wn. App. 439, 447,119 P.3d 373 (2005).
Because there are no statutory limits on the time that may elapse between the date that a signature is affixed to a petition for the removal of a county seat and the date that such a petition is filed, and no reported cases applying such a limitation, we conclude that signatures on a timely-filed removal petition could not be invalidated solely on the basis of the amount of time that passes between the date a signature is collected and the date a petition is filed. We observe that, as a practical matter, the longer the period between the time that a signature is affixed to a petition and the time that the petition is filed, the less likely it may be that the signature will still be that of a "qualified voter of the county" at the time the petition is canvassed to determine if it contains the requisite number of signatures.
[Original Page 10] 4. After a petition has been submitted underRCW 36.12.010, can signatures be withdrawn, or additional signatures oradditional petitions be submitted, prior to the completion of thecanvassing of the signatures?
RCW 36.12.010 provides a deadline for the filing of a removal petition — any petition must be filed no later than six months prior to the proposed election on the issue. We conclude that the filing deadline, and not the start or completion of the canvassing of a removal petition(s), serves as the deadline for adding signatures or signature petitions and withdrawing any previously submitted signatures.
Neither the provisions of RCW 36.12, nor the general election laws under RCW 29A.72, address the question of whether a person who has signed a removal petition may later withdraw his or her signature.[7]
However, the right of voters to withdraw their signatures from a petition, or to revoke a prior withdrawal, has been recognized by Washington's courts. State ex rel. Mohr v. City of Seattle, 59 Wash. 68,70, 109 P. 309 (1910); McAlmond v. City of Bremerton, 60 Wn.2d 383, 385,374 P.2d 181 (1962). The only limitation placed upon this general principle is that the withdrawal, or revocation of a prior withdrawal, must occur in a timely manner.
There are a number of Washington cases that discuss the time limit for withdrawing a signature or revoking a prior withdrawal. In State ex rel.Mohr, the Court reviewed a petition seeking to refer an ordinance passed by the City of Seattle to a local election. The Seattle City Charter provided that the city comptroller was obligated to verify the sufficiency of the signatures to the petition. Several petitions seeking to withdraw previously submitted signatures were forwarded to the comptroller. Some of the petitions seeking to withdraw signatures were transmitted prior to the comptroller's determination of the sufficiency of the referendum petition and some were submitted after that determination. State ex rel. Mohr, 59 Wash. at 70. The Court held that petition signatures could be withdrawn before the entity to whom the petition is addressed acquires "jurisdiction" over the petition or "at least before final action on the petition is taken." Id. at 73. After concluding that the city comptroller was the only entity with authority to canvas the sufficiency of the petitions, the Court held that petitions seeking to withdraw previously filed signatures were timely if filed prior to the comptroller's sufficiency determination, but not if filed thereafter. Id. at 73-75.
In Rominger v. Nellor, 97 Wash. 693, 696, 167 P. 57 (1917), the Court cited to its prior opinion in State ex rel. Mohr, and concluded that signatures on a petition seeking a recall election for a county commissioner could be withdrawn between the time the petition was first filed and the date fixed by the county auditor to canvass the recall petition. The Court noted that the usual reason given for requiring a timely withdrawal is the desire to avoid any unnecessary delay in the proceedings. Because the auditor's determination that a recall petition contained a [Original Page 11] sufficient number of signatures was all that needed to occur before referring the matter to an election, the Court concluded that there was no issue of delay if signatures were withdrawn prior to the canvass of the petition. Rominger,97 Wash. at 696.
In State ex rel. Harris, the Court concluded that the secretary of state could not accept withdrawals of signatures on a petition for a state-wide initiative because the secretary was not vested with the obligation of determining the sufficiency of the petition. Referring back to its holding in State ex rel. Mohr, the Court restated the principle that signatures on a petition may be withdrawn before "the jurisdiction of the officer to whom it is addressed attaches, but not after final action" is taken on the petition. State ex rel. Harris,130 Wash. at 430. At the time the State ex rel. Harris case was decided, state law provided that local election officials were assigned the "quasi judicial function of determining the authenticity of all signatures." Id. at 432. Accordingly, while the election laws provided the secretary of state thirty days to certify any petition that was filed, this task was ministerial because the sufficiency of the petition had already been determined by local election officials.[8]
Subsequently, the laws dealing with the canvassing of initiatives were changed so that the task of determining the sufficiency of initiative petitions was vested with the secretary of state. Laws of 1933, ch. 144. Based upon that change in the election laws, this office later concluded that the secretary of state then had the power to accept withdrawals of signatures from an initiative petition. See AGO 55-57 No. 268. That opinion notes some disagreement in the case law around the nation with regard to the timeliness of signature withdrawals and takes the view that the finality of signatures on a petition turns upon the statutes that establish the timing, manner, and means for ascertaining the sufficiency of the petition.
Based upon these authorities, we think the general rule in Washington is that signatures on a petition seeking an election on some issue may be withdrawn, or withdrawals revoked, up to the point where the sufficiency of a petition is determined. This is consistent with the majority of other states' decisions, particularly those which involve petitions for the removal of a county seat. See, e.g., LaLonde v. Bd. ofSupervisors of Barron Cy., 80 Wis. 380, 49 N.W. 960 (1891); M.L. Cross,Annotation, Right of Signer of Petition or Remonstrance to WithdrawTherefrom or Revoke Withdrawal, and Time Therefor, 27 A.L.R.2d 604 (1953). However, a number of cases in several states distinguish the application of this general rule where the petition statute provides an express deadline for the filing of a petition. In those cases, the filing deadline is used as the last point signatures may be added or withdrawn.
[Original Page 12] For example, the South Dakota Supreme Court applied the principle that signatures may be withdrawn up to the point that a petition is determined to be sufficient in the case of a removal petition, State ex rel. Andrews v. Boyden, 21 S.D. 6, 108 N.W. 897, 899
(1906), but distinguished that case where a statutory deadline had been established for the filing of petitions to consolidate counties,State ex rel. Williams v. Bateman, 60 S.D. 320, 244 N.W. 357, 360
(1932). Later, in State ex rel. Papke v. Denu, 66 S.D. 282, 281 N.W. 822
(1938), the court allowed signatures on a removal petition to be withdrawn after canvassing had begun, but before the board had completed its canvass and before the filing deadline had passed.[9] The same distinction has been drawn in Kansas (compare State ex rel. Lewis v.Eggleston, 34 Kan. 714, 10 P. 3 (1886) with State ex rel. Griffith v.City of Walnut, 166 Kan. 296, 201 P.2d 635 (1949)) and in Minnesota (compare Slingerland v. Norton, 59 Minn. 351, 61 N.W. 322 (1894)with Dimeier v. Golling, 243 Minn. 237, 67 N.W.2d. 898 (1954)).
These other state cases are significant because of the 1985 amendments to RCW 36.12.010 establishing both a deadline for filing removal petitions — petitions must be submitted at least six months before any election on such a proposal — and requiring the county to issue a statement analyzing the financial impact of the proposed removal at least sixty days before the election. This deadline places a clear limit on the time for filing any petition including any supplemental petitions or signatures.[10] A natural reading of RCW 36.12.010 is that the legislature expected that the final canvassing of any removal petition(s) would occur after the filing deadline but with sufficient time left to prepare the financial impact statement where a removal petition is deemed sufficient and referred to an election.[11] The cases that rely upon the filing deadline as the last point for withdrawing signatures do so to provide a single point for both adding and withdrawing signatures. This prevents the possibility of gamesmanship in the petition process that could occur by providing signatures before the filing deadline so the petition organizers think they have enough signatures, and then withdrawing signatures after the time for [Original Page 13] adding signatures has passed, but before final action is taken determining the sufficiency of the petition, to defeat the petition. See, e.g., State ex rel. Griffith, 201 P.2d at 637.
Considering all of these authorities, we conclude that Washington's courts would likely follow the principle that a statutory deadline for filing a petition serves as the deadline for both adding and removing petition signatures.
5. If petitions are submitted immediately prior to a general election(e.g., prior to the November 2008 general election) and the signaturescannot be canvassed prior to such general election, should the number ofvotes cast in the last general election before the petitions are filed(e.g., the November 2006 general election), or should the number ofvotes cast in the last general election before the signatures arecanvassed (e.g., the November 2008 general election), be used todetermine the number of signatures required under RCW 36.12.020?
Read together, RCW 36.12.010 and .020 establish specific timelines and duties regarding the filing and canvassing of removal petitions. Your question appears to pose a hypothetical canvassing process that is inconsistent with these statutory requirements — failure to complete the canvassing of a timely-filed removal petition (e.g., a removal petition filed at least six months before the election) in time to refer a sufficient petition to the election. We conclude that there is a duty to canvass a timely-filed removal petition in time to refer the removal question to the next general election of county officers, and prepare the required financial impact statement, where the removal petition contains the required number of signatures. Where this timeline and canvassing process is followed, the sufficiency of a timely-filed removal petition must be determined by comparing the number of valid signatures to the number of votes cast in the last general election preceding the filing deadline for the petition. Our more detailed analysis follows.
We begin by reviewing the two statutes that provide the means for submitting a proposal to remove the county seat to an election. RCW 36.12.010 provides that petitions seeking to refer a proposal to remove the county seat to an election must be filed "at least six months before the election." That statute also requires the county to "issue a statement analyzing the financial impact of the proposed removal at least sixty days before the election." RCW 36.12.010. RCW 36.12.020
specifies that, "[i]f the petition is signed by qualified voters of the county equal in number to at least one-third of all the votes cast inthe county at the last preceding general election the board must, at thenext general election of county officers, submit the question of removal to the electors of the county." (Emphasis added.) Taken together, these two statutes establish an orderly process for filing removal petitions, canvassing the petitions, and referring a sufficient removal petition to an election.
The sufficiency of a removal petition is determined based upon the canvassing process that validates and counts the signatures submitted. That canvassing process must necessarily conclude after the statutory deadline for filing any petitions in order to fully canvass all[Original Page 14] signatures that may be submitted.[12] Accordingly, if removal petitions are submitted no later than six months prior to a scheduled election for county officers, we conclude that RCW 36.12.020
places a duty upon a board of county commissioners to canvass the removal petitions with sufficient time to refer the matter to that election if the petition is deemed sufficient and also with sufficient time to prepare the required financial impact statement.[13]
We next examine the basis for making any sufficiency determination. RCW 36.12.020 requires a board of county commissioners to compare the number of valid petition signatures with the number of "votes cast in the county at the last preceding general election". This necessarily requires an initial determination of the election to which a removal question may be referred because the sufficiency of the removal petition is evaluated against the votes cast in the county at a preceding general election.
Removal questions may only be referred to a "general election of county officers".
RCW 36.12.020. The list of elective county officers is enumerated in RCW 36.16.030. Most county officers identified in this list are elected once every four years, with the next election for such officers occurring in 2008, and then every four years thereafter.[14]See RCW 36.16.010. However, that election cycle provision does not apply to the election of county commissioners. See RCW 36.16.020. County commissioners are elected for a term of four years, but with staggered terms so that their election occurs once every two years in even numbered years. RCW 36.32.030. The election cycle for the officers of charter counties established pursuant to article XI, section 4 of the Washington Constitution are identified in each charter. Some charter counties may choose to elect officers in odd numbered years.See RCW 29A.04.321(1)(d).
Reading these statutes together, we conclude that a removal petition may only be referred to a general election for county officers. In non-charter counties, these elections will occur once every two years in even numbered years. The general election cycle for charter county officers will take place as set forth in each county's charter.
[Original Page 15] Applying the provisions of RCW 36.12.020, the canvassing process should look to the votes cast in the county at the last general election preceding the filing deadline for a removal petition to determine the benchmark number of valid signatures for a sufficient petition. Because there are statewide general elections held every year (RCW 29A.04.321), we next examine whether the reference in RCW 36.12.020 to "the last preceding general election" refers to any general election or only those general elections regularly scheduled for the county in which the removal petition has been filed (e.g., general elections for state and county officers).
RCW 36.12 was enacted in 1890. Laws of 1889-90, p. 318. At that time, Washington's Constitution provided for general elections for state representatives and senators every two years in even numbered years. Const. art. II, §§ 5, 6. There were no statutory provisions establishing any other general election cycle. Accordingly, it is reasonable to conclude that RCW 36.12 was enacted at a time when general elections were thought of as regularly scheduled elections for the replacement of elective officers. That is consistent with the historical legal definition of the term "general election" — "A regularly recurring election to select officers to serve after the expiration of the full terms of their predecessors." Black's Law Dictionary 615 (5th ed. 1979). For most counties, these elections occur every two years in even numbered years.[15]
The first statutory reference to an odd year general election cycle was in 1963 when the provisions relating to elections for cities, towns, and districts were amended. Laws of 1963, ch. 200, § 1. A provision for annual state-wide general elections did not exist until 1973 when legislation was enacted to ensure that state-wide initiatives and referenda could be brought annually. Laws of 1973, ch. 4, § 1. Neither of these odd year election provisions appears to be helpful in ascertaining the legislative intent behind RCW 36.12. The 1963 legislation focuses solely on elections for cities, towns, and districts where no countywide votes may be cast. The 1973 legislation was primarily to facilitate annual consideration of statewide initiatives and referenda. The only elective offices affected by the 1973 enactment are for vacancies that must be filled, a special rather than a general election, and the election of county officers in charter counties where the charter may provide for an odd year election cycle. Accordingly, we conclude that the phrase "last preceding general election" within RCW 36.12.020 does not refer to every general election in Washington State. The legislature more probably intended to reference any general election where an officer is being elected and voted upon by the county electors. In most counties, that will be an even year election. In charter counties, that may be an odd year election, depending upon the provisions of the county charter.
Thus, under the scenario set forth in your question, in most counties a petition seeking to refer a proposal to remove the county seat to the November 2008 general election would have to be filed at least six months prior to that election. Canvassing of any timely-filed petition(s) would conclude after the filing deadline but with enough time to refer any sufficient petition to the election and to prepare the required financial impact statement. The appropriate benchmark for determining whether sufficient valid signatures have been filed is the number of county votes [Original Page 16] cast in the 2006 general election, which is the last previous general election for elected officials before the filing deadline for the removal petition(s).
6. If it is determined that an insufficient number of valid signatureshave been submitted, must the county retain the original petitions orreturn them to the person that submitted them?
The statutory provisions relating to removal petitions and elections do not address this question.[16] In the absence of any statutory direction, we conclude that the disposition of any removal petitions filed with a county is controlled by the provisions of RCW 40.14. Petitions for removal of a county seat, after they are submitted to the county, meet the definition of a public record. RCW 40.14.010. State agencies are required to retain all public records in accordance with established records retention schedules, or in accordance with any determination by the state archivist that the records have historical value. RCW 40.14.030, .060. See also WAC 434-615-010 (public records as public property),-020 (custody).
At the present time, the records retention schedules do not appear to specifically address the retention of petitions for the removal of a county seat. If a similar form of record schedule is not found that provides an applicable retention schedule, [17] a board of county commissioners may contact the state archivist to obtain a specific retention schedule for removal petitions.
Your question may be asking whether removal petitions that have been determined insufficient may be retained until a sufficient number of additional signatures are obtained and filed at some point in the future, accumulating petitions filed over two or more years. We conclude that is not authorized. RCW 36.12.020 does not expressly provide this conclusion, but any other conclusion renders the statutory framework unworkable.
As discussed in reply to your previous question, RCW 36.12.020
requires a determination as to whether a removal petition contains the number of signatures sufficient to refer the removal question to an election — signatures equal to "one-third of all the votes cast in the county at the last preceding general election". Once that sufficiency determination is made, the process is complete. Removal petitions with sufficient signatures must be referred to an election. If an insufficient number of petitions have been submitted, the petition drive has failed, no election occurs, and the process contemplated by RCW 36.12.020 is complete as to those petitions. Retaining the petitions and canvassing them again in a subsequent year (with later-filed petitions added) or returning the petitions to the proponents and allowing them to be re-submitted in a subsequent year (along with additional signatures collected later) would be inconsistent with the fixed reference point for evaluating a petition's sufficiency established by RCW 36.12.020.
[Original Page 17] 7. If it is determined that a sufficient number ofvalid signatures have been submitted and an election is held, doesRCW 36.12.050 require the board of county commissioners to canvass theelection, or can the board of county commissioners request that thecanvassing board, comprised of the persons set forth underRCW 29A.60.140, canvass the election?
We refer you to the analysis provided in response to your first question. Under the provisions of RCW 36.12, "duties are cast upon the board of county commissioners which are separate and distinct from their ordinary and usual duties." Lawry, 12 Wash. at 448. While the canvassing function associated with the validation of removal petitions is somewhat generally referenced, the canvassing function performed by a board of county commissioners is much more explicit. RCW 36.12.050 requires a board of county commissioners to receive election returns, compare them, and ascertain the results of the election. That obligation involves more than a simple ministerial counting function, because there is an element of discretion associated with resolving any questions regarding the validity of votes cast. The opinion in Krieschel v. Board ofCommissioners of Snohomish County, 12 Wash. 428, 41 P. 186 (1895), is particularly instructive in this regard. The election determination made by the Snohomish Board of County Commissioners regarding the question of removal was invalidated, because they had only observed the canvassing process rather than undertaking the process themselves. Similarly, inState ex rel. Swerdfiger, the Court refused to order the county canvassing board to perform the canvass required by what is now RCW 36.12.050, holding that it was the duty of the local board of county commissioners.
To the extent that certain of the canvassing functions are purely ministerial and require no exercise of discretion, a board of county commissioners may delegate those tasks to another entity. However, boards of county commissioners are obliged (1) to perform canvassing functions in relation to removal petitions that require the exercise of discretion, and (2) to ultimately ascertain the results of a removal election and provide the determinations and notices specified in RCW 36.12.050. RCW 36.12.060, .070.
We trust that the foregoing analysis will be helpful to you.
Sincerely,
ROB MCKENNA Attorney General
MICHAEL S. GROSSMANN Senior Counsel
wros
[1] This chapter of the Revised Code of Washington remains essentially the same as when its provisions were first enacted in 1890. The only changes since then were enacted in 1985. Laws of 1985, ch. 145. RCW 36.12.010 was amended to provide a six-month deadline for filing removal petitions and require the preparation of a financial impact statement at least sixty days before an election on the issue of removal. RCW 36.12.080 and .090 were both amended to increase the time between successive elections on a removal proposal from four to eight years.
[2] Because the language of RCW 36.12 refers to boards of county commissioners, we will use that term in this opinion. Several Washington counties have reorganized their governments through the adoption of county charters (Const. art. XI, § 4), and some counties have created county councils and other legislative bodies that take a form different from the boards of commissioners established in RCW Title 36. Each county charter may determine how the powers assigned in statute to the board of county commissioners shall be distributed among the officers of a charter county. Const. art. XI, § 4.
[3] RCW 36.12.060 and .070 also require the board of county commissioners to provide notice of the place selected for the new county seat and the effective date, to deposit a statement of the returns on the election with the county clerk, and to provide the notice of the new county seat to the Washington secretary of state.
[4] The portions of RCW 36.12 that require county boards to verify signatures, to receive and compare election returns for the purposes of ascertaining the number of valid votes cast, and to ultimately determine if there are sufficient legal signatures or votes to carry some proposition forward, identify duties that are normally referred to as canvassing functions.
[5] While RCW 36.12.030 generally provides that elections on removal petitions are to be "held and conducted, and the returns made, in all respects in the manner prescribed by law in regard to elections for county officers", we do not conclude that the other portions of RCW 36.12 assigning specific canvassing duties to the board of county commissioners have been amended or repealed by subsequently enacted election laws establishing local canvassing boards or canvassing procedures for general elections. See, e.g., State ex rel. Swerdfiger v. Whitney, 12 Wash. 420, 422-23, 41 P. 189 (1895) (holding that a statutory change in the composition of a county canvassing board did not eliminate or modify the duties assigned to the board of county commissioners by the provisions of RCW 36.12).
[6] WAC 434-219-100 extends the provisions for observing signatures set forth in RCW 29A.72.230 to the canvassing of a petition seeking to place a candidate on a presidential primary ballot (WAC434-219-080).
[7] WAC 434-379-008(2) specifies that "[s]ignatures on initiative and referendum petitions submitted to the secretary may not be removed from the petition or eliminated from the signature count." This only applies to state-wide initiatives and referenda. See, e.g., Paxton.
[8] In McAlmond, the finality of petition signatures turned upon the nature of the proceedings the petition sought to initiate. Unlike the prior cases which dealt with petitions seeking to refer an issue to an election, this case dealt with a petition for the annexation of land. The annexation statute provided that once a sufficient petition was presented to a local government, the matter would then be presented in a hearing convened by the local government and the decision made by that body. In these circumstances, the city's jurisdiction attached at the date set for the hearing and signatures could be withdrawn, or withdrawals revoked, after the petitions had been verified as sufficient but before the hearing on the proposed annexation petition. McAlmond,60 Wn.2d at 385.
[9] Many reported cases seem to suggest that the sufficiency of a petition is determined at a single point in time. The Papke case is one of the few reported cases where it appears the process of canvassing a petition went on for some period of time. While the court noted that the signature withdrawals occurred prior to the conclusion of canvassing, the decision applied the principle set forth in Bateman that a filing deadline acts as the last point for both adding and withdrawing signatures. The court observed that if the county commissioners had allowed withdrawals after the filing deadline (because the canvass began before the filing deadline but necessarily ended sometime thereafter) that action would likely have been inconsistent with the holding in Bateman. See Papke, 281 N.W. at 824.
[10] Neither the provisions of RCW 36.12, nor the general election laws under RCW 29A.72, address the question of whether a removal question must be proposed in a single petition. However, in State ex rel. Howell v. Superior Court for Thurston County, 97 Wash. 569, 575-77,166 P. 1126 (1917), the Washington Supreme Court held that additional petitions for a particular referendum submitted after the first such petition was filed should be accepted and counted. The Court also found no significance to the fact that the constitutional provisions for initiatives and referenda use the word "petition" in the singular. In light of the holding in State ex rel. Howell, we also find no significance in the singular reference to a petition in RCW 36.12.020.
[11] It may be that a board of county commissioners will begin to canvass a removal petition immediately upon the filing of the first petition. However, to give effect to the filing deadline, the completion of canvassing, and the final determination of a removal petition's sufficiency, will always follow the filing deadline.
[12] There is nothing that prevents the county from commencing the canvassing process once a removal petition is filed. However, as discussed in answer to your previous question, signatures may be added to, or withdrawn from, the petition prior to the statutory filing deadline. Accordingly, the canvassing process cannot be concluded until after the filing deadline passes.
[13] Your question refers to petitions "submitted immediately prior to a general election (e.g., prior to the November 2008 general election)." To the extent your question hypothesizes that someone might attempt to file removal petitions less than six months prior to the November 2008 election, those petitions would not be timely with respect to that election. Although the statutes are not explicit on this point, we think they clearly imply that petitions are to be canvassed with respect to the next general election occurring after they are filed. For example, any petition(s) filed in October 2008 would be considered a proposal to refer a removal issue to the next general election of county officers held in November 2008. However, they would not be timely and therefore would be unsuccessful in that regard. We see no basis for accepting petitions in October 2008 and "holding" them for a future election. This would, among other issues, cause confusion regarding how to canvass the petitions and decide which signatures are valid.
[14] While vacancies arising within the first biennium of any term may be filled at the next general election (RCW 36.16.010), the election for any vacant seat is a nonrecurring election and thus a special election. See RCW 29A.04.175 (defining special elections), .073 (defining general elections).
[15] As discussed above, charter counties may elect their officials in odd numbered years.
[16] In contrast, RCW 29A.72.200 provides that failed petitions for state-wide initiatives and referenda shall be destroyed.
[17] The public records retention schedule for local government identifies a six-year holding period for what may be viewed as a similar public record — "petitions for recall relating to public officials" — with a disposition authorization number of AU 52-03C34.